THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEITH PATRICK, Defendant-Appellant.

First District (3rd Division)   No. 1—87—3148

Opinion filed October 10, 1990.

Michael J. Pelletier and Elizabeth Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, and Robert F. Heilingoetter, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant Keith Patrick was found guilty of two counts each of attempted murder and armed robbery and sentenced to concurrent terms of 25 years' imprisonment on each count. On appeal, defendant argues that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in submit-

ting Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981) (hereinafter IPI Criminal 2d) defining circumstantial evidence to the jury; (3) his right to present a defense was prejudicially impaired by the State's failure to disclose a potential witness' name until near the end of the trial; (4) the State's remarks in closing argument constituted reversible error; and (5) the trial court erred in denying his request to present an aggravated battery instruction to the jury. We affirm.

At trial, the following facts were revealed. Hyija Kim testified that her husband, Young Kim, owned a shoe store which she helped him operate on East 51st Street in Chicago. At approximately 10 a.m. on June 16, 1986, while Mr. and Mrs. Kim were working in the store, defendant entered alone. At his request, Mrs. Kim brought defendant a pair of shoes and watched as he tried on one shoe. After trying on the shoe, defendant stated that he wanted to buy the pair and approached the sales counter. At the counter, defendant placed his right hand into his pocket and removed his empty hand. Mrs. Kim told her husband that defendant was acting strange, and Mr. Kim told defendant he could have anything that he wanted. When defendant pulled his hand out of his pocket again, it contained a gun. Mr. Kim described the gun as big and silver. Defendant pointed the gun at Mr. and Mrs. Kim and instructed them to walk to the rear of the store, where he made them lie down on the floor. Defendant removed Mr. Kim's wallet from his pocket and took $250 in cash.

Defendant walked into the main store area for a moment, returned to the rear, and ordered both Mr. and Mrs. Kim into the warehouse located in the back of the store. As they proceeded into the warehouse, Mr. Kim turned around and tried to grab defendant's gun. Defendant fired the gun twice, striking Mr. Kim in the stomach and Mrs. Kim in the chest. Defendant then left the store with the pair of shoes under his arm. While hospitalized, Mrs. Kim made a tentative identification of defendant from a photo array. On June 23, Mr. Kim positively identified defendant in a police lineup as the man who robbed and shot him and his wife. Both witnesses identified defendant in court.

Jimmy Rodgers, age 72, testified that on June 16, 1986, he was sitting outside a laundromat located across the street from the Kims' shoe store. Mr. Rodgers testified that at about 10 a.m., he noticed a man running out of the shoe store just before Mr. Kim began screaming for help. When Mr. Rodgers crossed the street, he saw that Mr. Kim was bleeding from the stomach. Mr. Rodgers testified that he was able to see the profile of the man who ran from the store at a

distance of approximately 25 to 30 feet. Rodgers positively identified defendant in a police lineup and at trial as the man he saw running from the Kims' shoe store on June 16, 1986.

Defendant testified on his own behalf and stated that on the date and at the time that the crime was committed he was with his girlfriend at her home. He testified that several members of his girlfriend's family were also present. In addition, defendant's aunt and grandmother both testified that defendant always treated them in a polite manner. Following closing arguments, the jury returned verdicts of guilty of two counts each of attempted murder and armed robbery. Defendant was subsequently sentenced to concurrent terms of 25 years' imprisonment on each count in the Illinois Department of Corrections. This appeal followed.

■■■ On appeal, defendant first argues that the State failed to prove him guilty beyond a reasonable doubt. We disagree. The positive identification of an accused by a single eyewitness may be sufficient to sustain a conviction. (*People v. Dean* (1987), 156 Ill. App. 3d 344, 351, 509 N.E.2d 618, 622.) An identification is considered positive, and thus reliable, where (1) the witness had a sufficient opportunity to view the offender, (2) showed an adequate degree of attention to the characteristics of the assailant, (3) described the perpetrator with a reasonable degree of accuracy, (4) displayed a sufficient amount of certainty in identifying the offender, and (5) identified the accused within a reasonable period of time following the crime. (156 Ill. App. 3d at 351, 509 N.E.2d at 622.) On review, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472-73.

■■ In the present case, three witnesses identified defendant. Mr. Kim's identification was based on his observation of defendant in the store as he held him and his wife at gunpoint before robbing and shooting them. One week following the incident, Mr. Kim positively identified defendant in a police lineup. Mrs. Kim also testified with certainty that defendant was the man whom she waited on in her shoe store on June 16, 1986, before he pulled out a gun and robbed and shot her and her husband. Although Mrs. Kim's initial identification of defendant from a photographic array was tentative, she positively identified him in court. Mrs. Kim testified that defendant was no more than five to six feet away from her during the entire ordeal. Mr. Rodgers testified that he observed defendant's profile as he ran from the store, and he also positively identified defendant in a police

lineup and in court. In sum, all three witnesses had a sufficient opportunity to view defendant, displayed sufficient certainty in identifying him and identified him within a reasonable period of time following the crime. Under these circumstances, it is clear from the record that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Defendant next argues that the trial court erred in submitting IPI Criminal 2d No. 3.02 defining circumstantial evidence to the jury. We disagree.

■ The failure to raise an allegation of error at trial and in a post-trial motion constitutes waiver of the alleged error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Similarly, a defendant waives objection to jury instructions if he does not object or proffer alternative instructions at trial. (*People v. Almo* (1985), 108 Ill. 2d 54, 66, 483 N.E.2d 203, 208.) Although this court may consider an issue raised on appeal even where the objection has been waived, this procedure is utilized only when the alleged error so affects substantial rights that it rises to the level of plain error. *Almo*, 108 Ill. 2d at 66.

■ In the present case, defendant failed to object either at trial or post-trial to the introduction of the complained-of jury instruction. Defendant also failed to proffer an alternative instruction during the jury instruction conference. Under these circumstances, defendant's objection is waived. Furthermore, any alleged error in the introduction of the instruction does not rise to the level of plain error. We nonetheless conclude that the trial court did not err in submitting the circumstantial evidence instruction to the jury.

Defendant next argues that his right to present a defense was prejudicially impaired by the State's failure to disclose a witness' name until near the end of the trial. We disagree.

■ The suppression by the prosecution of requested evidence favorable to the accused violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution. (*Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97.) In the present case, defendant asserts that, prior to trial, his trial counsel made a request to examine the pictures used in connection with the photographic array from which defendant was identified. The State responded by informing the defense that the photographs would be made available for viewing prior to trial. However, defendant's trial counsel did not obtain the photo array until the trial had begun.

When defendant finally viewed the photographs, he recognized one of the pictures to be that of a person known to him as Honeyboy. Defendant then requested that the State provide him with the real name and last known address of Honeyboy. Two days later, the State complied with defendant's request. Defendant argued that the State's late compliance precluded him from locating and interviewing Honeyboy or any of the other persons pictured in the photo array for use in his defense. On appeal, defendant asserts that the State's failure to disclose the identity of Honeyboy at an earlier date prejudiced him because the witness may have provided exculpatory information useful to the defense.

■ At trial, Chicago police detective Szudarski testified that during his investigation of the incident someone from the neighborhood informed him that two persons named M.C. and Honeyboy were seen in the neighborhood on the date of the armed robbery. Szudarski located photos of these two men from police records and later placed their photos in the array that was shown to Mrs. Kim. Mrs. Kim identified defendant, who was also known as M.C., but did not identify Honeyboy. Further, neither Mr. Kim nor Mr. Rodgers identified Honeyboy as a participant in the incident. In addition, defendant testified at trial that he and Honeyboy were members of the same street gang and that he had once lived in the apartment building where Honeyboy currently lived. Under these circumstances, we conclude that since none of the witnesses identified Honeyboy as a participant in the offense, evidence of Honeyboy's identity was not exculpatory in nature and did not clearly relate to defendant's guilt or punishment. Further, because defendant was familiar with Honeyboy and knew where he lived, the State's failure to provide the requested information at an earlier date, while improper, did not preclude defendant from locating, interviewing or calling him to testify at trial.

■ Defendant next argues that the State's remarks in closing argument constituted reversible error. We disagree. A prosecutor is allowed wide latitude in closing arguments, and a misstatement by a prosecutor does not deprive defendant of a fair trial, unless such remark clearly affected the outcome of the trial. (*People v. Davis* (1982), 104 Ill. App. 3d 512, 516, 432 N.E.2d 1134, 1137.) Whether a prosecutor's comments or arguments constitute prejudicial error is evaluated according to the language used, its relation to the evidence, and the effect of the argument on the defendant's right to a fair and impartial trial. (*People v. Radar* (1988), 178 Ill. App. 3d 453, 462, 532 N.E.2d 1365, 1370.) Remarks in closing arguments must be examined in the context of the remarks made both by the State and the defense; but,

all remarks made in the closing arguments must be based upon the evidence presented or reasonable inferences drawn therefrom. *People v. Lewis* (1990), 198 Ill. App. 3d 976, 982, 556 N.E.2d 697, 701.

Defendant contends that he was prejudiced by the State's closing arguments wherein the prosecutor argued that defendant was not prejudiced by the alleged late disclosure of Honeyboy's identity. Defendant admitted during his testimony both that he knew Honeyboy and that they belonged to the same street gang and saw each other two to three times per week before defendant's arrest. The prosecutor argued that based on these facts, defendant had the power to subpoena Honeyboy to testify if he felt it would help his defense. The trial court overruled defendant's objection to this portion of the State's closing argument. In so doing, the court noted:

"Well, Mr. Patrick testified on both Direct Examination and Cross-Examination that he knows Honeyboy, that he is a Cobra Stone. And on Cross he said that he was a member of the gang for five years and Honeyboy is a member of the gang with him. Now, there was some conversation. There was a question on Cross as to how many times a week he saw him. I did not happen to write it down; I don't know if he saw him two or three times a week."

As the court noted, the State's argument was based upon the evidence presented at trial and reasonable inferences therefrom. In addition, the State's comments were invited response to defense counsel's closing argument in which he stated as follows:

"Mr. Patrick testified that Detective Szudarski had told him that Honeyboy isn't going to be there, you're going to take the fall. Well, I think he knew more about Honeyboy than he told about him and perhaps Honeyboy has something to do with this matter. However, Honeyboy was not here to testify or we don't know where his whereabouts is [*sic*]."

Defendant also complains that the following portion of the State's argument was prejudicial:

"You took an oath when you came into this courtroom, ladies and gentlemen, to do a duty, to listen to the evidence, to watch carefully what came from that stand. Don't let smoke screens overshadow the real issue here. The real issue is whether this guy went into that store with that gun and tried to kill these people and took money from Mr. Kim in Mrs. Kim's presence. That is the issue. That is the only issue.

Don't let all of the clouds over all of this Honeyboy, and this and that, cloud the fact that these people identified this guy.

This is the guy. This is the guy that tried to kill them. Don't let mind games take over your common sense, ladies and gentlemen. Don't let that happen.

You go in that jury room, ladies and gentlemen, you tell the Kims that what they did was not in vain by coming in here. You tell Mr. Rodgers as I told you before a man on a day when nobody wants to get involved came up here and testified and told you what happened and what he saw and pointed his finger at this man. You tell Mr. Rodgers that he didn't waste his time when he did that and he didn't waste his time and possibly his safety when he did that."

Viewed in context, the State's arguments did not prejudice defendant or clearly affect the outcome of his trial. Both victims named defendant as the person who robbed and shot them on June 16, 1986. In addition, one witness testified that he saw defendant run from the store following the shooting. That evidence was not substantially contradicted by defendant's uncorroborated alibi testimony. Under these circumstances, we conclude that the prosecutor's closing argument did not deny defendant his right to a fair trial.

Finally, defendant argues that the trial court erred in denying his request to present an aggravated battery instruction to the jury. We disagree.

■■ ■ Where there is evidence in the record which would reduce the crime to a lesser rather than the greater offense, defendant is entitled to an instruction on the lesser-included offense. (*People v. Smith* (1981), 94 Ill. App. 3d 969, 973, 419 N.E.2d 404, 407.) In the present case, the trial testimony indicated that defendant shot both Mr. and Mrs. Kim at close range in vital areas of their bodies (*i.e.*, the chest and stomach). A rational trier of fact could have reasonably found that behavior to indicate an intent to kill. In addition, defendant failed to present any evidence which would reduce the conviction to the lesser offense. We therefore conclude that the trial court did not err in denying defendant's request to present an aggravated battery instruction to the jury.

For all of the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CERDA, P.J., and WHITE, J., concur.