THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES GARLAND, Defendant-Appellant.

First District (5th Division)   No. 1—91—2810

Opinion filed October 15, 1993.—Modified on denial of rehearing December 3, 1993.

Michael J. Pelletier and Patricia Mysza, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

James Garland was indicted on three counts of armed robbery and three counts of aggravated unlawful restraint. Codefendants Armele Scroggs and Henry Holmes were also indicted on the same charges. Following a jury trial, defendant was found guilty of two counts of armed robbery and sentenced to life imprisonment as a habitual criminal. A timely notice of appeal was filed.

In requesting that this court reverse his conviction, defendant makes three arguments: (1) the trial court improperly omitted a mental state from the jury instructions for armed robbery; (2) the Habitual Criminal Act (the Act) (720 ILCS 5/33B—1 *et seq.* (West 1992)) is unconstitutional because it: (a) violates the provisions of the Illinois and United States Constitutions prohibiting *ex post facto* laws and double jeopardy; (b) violates article I, section 11, of the Illinois Constitution (Ill. Const. 1970, art. I, §11), and due process of law in that it requires the imposition of a natural life term without regard to mitigating factors; (c) violates the separation of powers doctrine of the Illinois Constitution because it vests too much discretion in the prosecutor; and (d) was passed in violation of the single subject rule of the Illinois Constitution; and (3) the trial court improperly failed to consider a *pro se* motion in which defendant alleged that a material defense witness had not been called at trial and therefore a new post-trial hearing is required. Defendant also urges that the judgment order incorrectly indicates that defendant was convicted of three counts of armed robbery and must be corrected to reflect only two convictions.

On February 27, 1987, Steven Malanowski was working as a manager of the Wendy's restaurant located at 3830 South Archer Avenue in Chicago, Illinois. At about 10:15 p.m. he was involved in food preparation. Henry Ketter, an employee, was working the front register, and Damone Bailey, another employee, was working at the front grill.

Three men entered the restaurant. One of these men was later identified as defendant. Defendant and another man approached the front register. Henry Ketter proceeded to take their order. Defendant was looking at the doors of the restaurant while the other man ordered the food. The man with defendant showed Henry Ketter a gun and demanded money from the register. The man gave Ketter a maroon, nylon bag with a strap and ordered Ketter to put the money in it.

The third man went to the service area of the restaurant behind the front counter. This man showed Steven Malanowski a revolver and told him to go to the back of the restaurant. The man told him to open the safe and put the money in a Wendy's paper bag. Defendant went to the back office and said that a second register would not open. Steven Malanowski went to this register and opened it. Defendant ordered him to put the money in a Wendy's bag. After doing this, defendant told him to sit down under the back grill, out of sight. Steven Malanowski then called the police.

On March 11, 1987, Chicago police officer Michael Kuehlman was on duty at 8:30 p.m. He was with his partner, Officer Schultz. Both men were in plainclothes and in an unmarked car. They were keeping a Wendy's restaurant located at 2053 West Lawrence, Chicago, Illinois, under surveillance. Officer Kuehlman noticed three black males walking down the street. They all stopped, turned around, and looked at Officer Kuehlman. Officer Kuelman made a U-turn and the three men walked into the restaurant. Officer Kuehlman kept the Wendy's under surveillance and a few minutes later, the three men exited carrying coffee.

Officer Kuehlman pulled the police car over and exited the vehicle. Officer Kuelman saw defendant pull a revolver out of his pocket and throw it to the ground. Defendant was placed under arrest. Officer Schultz searched Holmes and found in his possession a maroon shaving kit with a replica gun inside. The gun defendant threw to the ground was identified by Steven Malanowski and Henry Ketter as the gun held by Scroggs, the man who went behind the front counter, during the Wendy's robbery on February 27, 1987. Henry Ketter also identified the maroon bag as an item that Holmes told him to put

money into during the February 27, 1987, robbery of the Wendy's restaurant.

On March 12, 1987, about two weeks after the robbery, Steven Malanowski, Henry Ketter and Damone Bailey viewed a police lineup at the Belmont and Western police station. Steven Malanowski testified that he identified the first man in the lineup as defendant and the second man in the lineup as Armele Scroggs. There was no loud talking or confusion during the lineup. Henry Ketter testified that he identified defendant and the fifth man in the lineup, Henry Holmes. Damone Bailey identified all three men from the Wendy's robbery, including defendant.

Detective William Moser testified that he conducted this particular lineup. The lineup was viewed separately by Steven Malanowski, Henry Ketter and Damone Bailey. Detective Moser testified that when Steven Malanowski and Henry Ketter viewed the lineup they identified Scroggs and Holmes, respectively. Detective Moser testified that they did not identify defendant. Detective Moser was only with Steven Malanowski and Henry Ketter for a few moments during their individual lineups. There were other detectives involved in this case. Both Steven Malanowski and Henry Ketter spoke with other detectives besides Detective Moser. Detective Moser also testified that Damone Bailey viewed the lineup and identified all three men from the Wendy's robbery, including defendant.

Each of the employees, Steven Malanowski, Henry Ketter, and Damone Bailey, made an in-court identification of defendant as being one of the perpetrators.

Before the case went to the jury, count I, which alleged the armed robbery of Damone Bailey, was nol-prossed. Following a jury trial, defendant was found guilty of armed robbery of Steven Malanowski and guilty of armed robbery of Henry Ketter.

The trial court denied the post-trial motion for a new trial filed by defense counsel. Defense counsel then informed the court that defendant had prepared a *pro se* "Petition for Compulsory Process." This motion requested that public defender Mary Hayashi be called as a witness. Attached to the motion was a written statement signed by Bailey. That statement summarized a conversation Hayashi had with Bailey on January 21, 1988. Parts of Bailey's statement had words typed in and then stricken, and those parts of the statement indicated that Bailey had not seen the perpetrators' faces during the robbery. It is not clear from the statement itself who struck the words, why they were stricken, or when they were stricken. Another part of the statement, which did not contain stricken words, stated that prior to view-

ing the lineup, an officer told Bailey that they thought they had the perpetrators of the robbery. Bailey's alleged written statement was inconsistent with his trial testimony. At trial Bailey testified that he saw defendant's face during the armed robbery. Bailey also testified that during the lineup procedure the police did not tell him that they thought they had the perpetrators.

The court determined at defense counsel's suggestion that the defendant's petition was not received at the appropriate time. The court informed defendant that his petition would not be considered because it was related to trial issues and the merits of the case as opposed to the sentencing procedure. The court allowed defendant to file the document and informed defendant that he could raise the issues contained in his petition on appeal or in a post-conviction petition.

The case proceeded to a sentencing hearing. Evidence was introduced establishing that on August 6, 1975, defendant pled guilty to an armed robbery that occurred on December 27, 1974. Defendant was sentenced to four years in the Illinois Department of Corrections. Additionally, it was established that on November 15, 1979, defendant pled guilty to an armed robbery that occurred on December 19, 1977. Defendant was sentenced to 10 years in the Illinois Department of Corrections for that offense. As a result of these two prior convictions, in addition to defendant's present conviction, defendant was sentenced to natural life imprisonment pursuant to the Act. (720 ILCS 5/33B—1 (West 1992).) From this judgment, defendant brings the present appeal.

■ Defendant objects to the omission of a mental state from the jury instructions. Defendant concedes that his argument has been rejected by reviewing courts in several cases. The general rule is that the failure to raise an allegation of error at trial and in a post-trial motion constitutes waiver of the alleged error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) While this court may consider an issue raised on appeal even where the objection has been waived, this procedure is utilized only when the alleged error so affects substantial rights that it rises to the level of plain error. *People v. Patrick* (1990), 205 Ill. App. 3d 222, 562 N.E.2d 1027.

Defendant concedes that he failed to object at trial but would have this court review the propriety of the jury instructions under the doctrine of plain error. We are not persuaded that any error so affected substantial rights as to rise to the level of plain error. Rather, even if the alleged error had not been waived, the jury instructions were proper. Defendant was convicted of armed robbery, a general in-

tent crime. (*People v. DeBusk* (1992), 231 Ill. App. 3d 229, 241, 595 N.E.2d 1156.) Specific intent exists where from the circumstances the offender must have subjectively desired the prohibited result. General intent exists when the prohibited result may reasonably be expected to follow from the offender's voluntary act even without any specific intent by the offender. (*People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139; see also *DeBusk*, 231 Ill. App. 3d at 241.) When the offense is a general intent crime and the mental state is necessarily implied by the circumstances of the crime, it is not error to omit the implied mental state from the jury instructions. (*DeBusk*, 231 Ill. App. 3d at 241.) General intent crimes do not have any particular mental state as an essential element. Rather, for general intent crimes a mental state of intent, knowledge, or recklessness is implied. (*People v. Coleman* (1990), 203 Ill. App. 3d 83, 560 N.E.2d 991; *People v. Avant* (1989), 178 Ill. App. 3d 139, 532 N.E.2d 1141; *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139.) Here the mental state is necessarily implied by the circumstances of the crime.

In attempting to support his contention that the trial court erred in omitting a mental state from the jury instructions on armed robbery, defendant cites four cases: *People v. Gean* (1991), 143 Ill. 2d 281, 573 N.E.2d 818; *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 375 N.E.2d 1297; *People v. Grant* (1981), 101 Ill. App. 3d 43, 427 N.E.2d 810; and *People v. Lewis* (1969), 112 Ill. App. 2d 1, 250 N.E.2d 812. However, these cases are distinguishable. For example, *Valley Steel* involved a specific intent crime and therefore the mental state was an essential element of the crime. The defendants were charged with filing false reports. The counts of the indictment relating to this charge alleged that the false filing was done "knowingly." Knowingly filing false reports is a specific intent crime. *Grant* is also distinguishable. While the court stated in *Grant* that allegations of a mental state were improperly excluded from the jury instructions, that case has been criticized as standing in opposition to the general rule. The general rule is that instructing the jury in the elements of an offense as the offense is defined in the statute is sufficient. (*People v. Podharsky* (1990), 197 Ill. App. 3d 349, 554 N.E.2d 578; *People v. Terry* (1988), 177 Ill. App. 3d 185, 532 N.E.2d 568; *People v. Talley* (1988), 177 Ill. App. 3d 170, 531 N.E.2d 1139; *People v. Leonard* (1988), 171 Ill. App. 3d 380, 526 N.E.2d 397; *People v. Anderson* (1981), 93 Ill. App. 3d 646, 417 N.E.2d 663.) *Podhrasky* stated that *Grant* should be limited to its own facts. (*Podhrasky*, 197 Ill. App. 3d at 354.) We agree. Similarly, defendant's reliance on *Lewis* is misplaced. That case held that the mental state was improp-

erly excluded from the jury instructions. However, there, the defendant had a history of mental illness which gave rise to serious questions concerning his ability to appreciate the criminality of his conduct. There was some evidence that the defendant was insane. Although the failure to include a mental state in the jury instructions is grounds to reverse a conviction where the record reveals that the principal contested issue was defendant's mental state (*Podhrasky*, 197 Ill. App. 3d 349), here the principal contested issue was not the defendant's mental state. *Gean* does not aid defendant's cause either. *Gean* involved the offenses of possession of salvage certificates without authority and possession of certificates of title without complete assignment. The court ruled that those offenses were specific intent crimes, not general intent crimes, such as armed robbery. *People v. DeBusk* (1992), 231 Ill. App. 3d 229, 595 N.E.2d 1156.

Jury instructions may be proper despite the absence of any mental state. (*People v. Deavers* (1991), 220 Ill. App. 3d 1057, 580 N.E.2d 1367.) In arguing that the absence of a mental state rendered the jury instructions improper, defendant cites *Yates v. Aiken* (1988), 484 U.S. 211, 98 L. Ed. 2d 546, 108 S. Ct. 534, *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965, and *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450. Those cases are distinguishable. They dealt with the use of evidentiary presumptions in jury instructions. Defendant correctly relies on *Sandstrom* for the proposition that the due process clause of the fourteenth amendment protects an accused against conviction except upon proof beyond a reasonable doubt of every essential element of the crime charged. (*Sandstrom*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.) It is also true that the State is prohibited from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime. (*Sandstrom*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450.) However, since no specific mental state is an essential element of armed robbery, and a mental state of intent, knowledge, or recklessness is implied from the act itself, the principles invoked by the defendant do not concern us in the present case. While the jury must be properly instructed on all essential elements of the crime, in the present case a specific mental state is not one of those elements.

■ Defendant's challenge to the constitutionality of the Act must be rejected. After our opinion in the case at bar was filed, the Illinois Supreme Court, in *People v. Levin* (1993), 157 Ill. 2d 138,

rejected the same attacks on the constitutionality of the Act made by defendant here. That decision is dispositive of those issues.

■ Defendant contends that the trial court improperly failed to consider a *pro se* motion in which defendant alleged that a material defense witness had not been called at trial and therefore a new post-trial hearing is required. Defendant asserts that the trial court should have treated his "Petition for Compulsory Process" as a post-trial motion alleging ineffective assistance of counsel. In *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068, the Supreme Court established a two-part test for evaluating claimed denials of effective assistance of counsel in violation of the sixth amendment. The defendant must show both that counsel's performance was deficient, falling below an objective standard of reasonableness, and that any deficiencies in counsel's performance prejudiced his or her defense. To satisfy the latter part of this test "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (*Strickland*, 466 U.S. at 693, 80 L. Ed. 2d at 697, 104 S. Ct. at 2067.) Rather, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Where a defendant claims that his representation was ineffective, the trial court must conduct a preliminary investigation of the factual matters underlying a defendant's claim. (*People v. Jackson* (1993), 243 Ill. App. 3d 1026, 614 N.E.2d 94.) In the present case defendant's motion requesting that an additional witness be called, when taken together with the attached written statement signed by Damone Bailey, reveals no clear basis for an allegation of ineffectiveness of counsel. Therefore the trial court had no duty to conduct a preliminary investigation of the factual matters underlying defendant's claim. In the present case defense counsel commented that his decision not to call the witness was a tactical one. The witness' statement itself is so equivocal that calling the witness might have hurt defendant's case. Even if, *arguendo*, the trial court failed to respond properly to defendant's post-trial claims that his attorney neglected to call a certain witness, such failure is not reversible error, if harmless. *People v. Nitz* (1991), 143 Ill. 2d 82, 133-35, 572 N.E.2d 895.

In order to determine whether any error on the trial court's part was harmless, we have thoroughly reviewed the record for in-

formation indicating the nature of defendant's charges against his trial counsel. Any contention by defendant that his counsel was ineffective in failing to call a witness to testify must be viewed in light of the fact that the decision to call a particular witness is a matter of trial strategy, and an ineffective assistance of counsel claim "which arises from a matter of defense strategy will not *** support a claim of ineffective representation." (*People v. Ashford* (1988), 121 Ill. 2d 55, 74, 520 N.E.2d 332.) Here, any error was harmless as opposed to prejudicial. The trial court's failure to examine the factual matters underlying defendant's claim, even if improper, did not affect the outcome of the proceeding. Even if Bailey's previous equivocal statement given to Mary Hayashi could have been used to successfully impeach his in-court testimony, the other evidence of defendant's guilt remains overwhelming. At most the additional witness might have cast doubt on the credibility of a single witness. Two other witnesses, Steven Malanowski and Henry Ketter, testified that they identified defendant in the lineup. Moreover, all three Wendy's employees, including Damone Bailey, made an in-court identification of defendant.

■ The judgment order for this conviction indicates that defendant was convicted of three counts of armed robbery. At the close of the evidence, but before the case went to the jury, one of the three armed robbery counts was nol-prossed. Since defendant was convicted of two counts of armed robbery, we modify the judgment order to so indicate.

For the foregoing reasons, the judgment of the circuit court is affirmed, as modified.

Affirmed, as modified.

MURRAY and COUSINS, JJ., concur.