2024 IL App (1st) 230171

FIFTH DIVISION
June 28, 2024

No. 1-23-0171

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 3 |
| | ) | |
| LOUIS HAMPTON, | ) | Honorable |
| | ) | Peggy Chiampas, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justice Lyle concurred in the judgment and opinion.
Justice Navarro dissented, with opinion.

**OPINION**

¶ 1    Defendant Louis Hampton was convicted of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2020)) and sentenced to six years in prison. On appeal, he argues he was denied a fair trial because the trial court refused to instruct the jury that, to find him guilty, it had to find that he "knowingly" possessed a firearm. For the following reasons, we reverse and remand for a new trial.

¶ 2                                 I. BACKGROUND

¶ 3    The State charged Mr. Hampton by indictment with AHC and other related offenses. The AHC count alleged that he "knowingly or intentionally possessed a firearm" after being convicted of certain other felonies. Before jury selection, the trial court read that language to the prospective jurors.

¶ 4    During opening statements, defense counsel asserted that Mr. Hampton was not guilty of

AHC because, although police officers discovered a firearm underneath the seat in a vehicle he was driving, the State could not prove that he knew the firearm was there.

¶ 5    Chicago police officer Michael Carreon testified that, around 7 p.m. on November 16, 2021, he and three other officers drove past a Jeep with an inoperable headlight. Officer Carreon made a U-turn, caught up to the Jeep, and activated his police vehicle's lights, siren, and spotlight. The Jeep turned left onto another street, and the spotlight illuminated the driver's side of the Jeep. Officer Carreon testified that he observed the Jeep's driver "make a forward movement" while "leaning towards the floorboard of the vehicle." The Jeep traveled about a quarter of a block more and pulled over.

¶ 6    Officer Carreon approached the Jeep and encountered Mr. Hampton, whom he identified in court, in the driver's seat. Officer Carreon testified that he smelled fresh cannabis through the open driver's side window. Mr. Hampton gave Officer Carreon identification that was not a driver's license and insurance documentation for the Jeep that did not specifically list him as an insured driver. According to Officer Carreon, Mr. Hampton did not make eye contact and appeared nervous. Officer Carreon asked Mr. Hampton to put the vehicle in park, which he did. He then asked Mr. Hampton to exit the Jeep, but Mr. Hampton refused. Officer Carreon asked Mr. Hampton to exit several more times over the course of about five minutes. At that point, the car's passenger, whom the officer had also been asking to leave the car, exited, and as that person did so, all the Jeep's doors unlocked. Officer Carreon opened the driver's door and again asked Mr. Hampton to exit the vehicle. Mr. Hampton complied and was placed in handcuffs.

¶ 7    Officer Carreon then looked into the driver's side of the car and found a loaded, black, semiautomatic pistol "protruding" from underneath the seat. He "had to do a slight lean" to see the firearm, which "wasn't deep underneath the seat," but the firearm was not buried under anything.

As the officers attempted to place Mr. Hampton in a police vehicle, he pulled away "pretty aggressive[ly]" and attempted to flee.

¶ 8     The State published footage from Officer Carreon's body-worn camera. It is included in the record on appeal and has been reviewed by this court. It depicts officers parking their vehicle, exiting, and approaching a dark SUV. Officer Carreon approaches Mr. Hampton, the driver of the SUV, but there is no audio until approximately 30 seconds into their conversation. When the audio begins, Mr. Hampton asks why the officer has stopped him, and Officer Carreon responds that one of his headlights is out. Mr. Hampton states that the vehicle is his "girl's" and provides an identification card, which the officer notes is not a driver's license, as well as proof of insurance, which the officer notes does not list Mr. Hampton as an insured driver of the vehicle. Officer Carreon asks Mr. Hampton if there is a gun in the car, and either Mr. Hampton or the passenger responds "No."

¶ 9     Officer Carreon then asks Mr. Hampton to step out of the vehicle. Mr. Hampton does not comply; he asks the officer to call "a white shirt," which Officer Carreon testified means a senior officer or supervisor. Officer Carreon asks multiple times if Mr. Hampton has any "weed" in the vehicle, and Mr. Hampton responds that he does not. Mr. Hampton speaks to someone else as if on the phone. He repeatedly declines the officer's requests to exit the vehicle. After a few minutes of conversation, Officer Carreon opens the driver's door, grabs Mr. Hampton's shoulder, and tells him to step out. Mr. Hampton complies. The officers pat him down and handcuff him. Officer Carreon leans into the vehicle from the open driver's door, but the camera points towards the street. As he straightens, the camera depicts him holding a firearm. He also searches the rear driver's side of the vehicle. As the officers go to place Mr. Hampton in the police vehicle, the camera is obstructed, and the officers repeatedly say that he is making it "worse" for himself and is going to

be charged with resisting.

¶ 10    At trial, Officer Carreon marked on a still image from his body-worn camera footage the place where he discovered the firearm. He noted that the firearm was not visible from the angle the image was taken, so he marked on the seat the spot where the firearm was beneath the seat. The image is included in the record on appeal and depicts a red mark a few inches back from the front of the seat.

¶ 11    On cross-examination, Officer Carreon acknowledged that his camera footage did not depict him asking Mr. Hampton why he reached downwards. On redirect examination, he testified he did not ask that because he did not want Mr. Hampton to flee the traffic stop.

¶ 12    Chicago police officer Timothy Karn testified that he tested the firearm Officer Carreon identified, a 9-millimeter semiautomatic pistol, and it was functional. The firearm's magazine could hold 12 rounds, with 1 additional round in the chamber. The State entered stipulations that Mr. Hampton had two prior convictions qualifying him for AHC and that there were four fingerprint impressions on the firearm's magazine but that they were unsuitable for identification.

¶ 13    Mr. Hampton called his girlfriend, Darshay Scott, as a witness. Ms. Scott testified that she owned the Jeep that Mr. Hampton had been driving. She also owned a black 9-millimeter firearm and had been issued a Firearm Owner's Identification (FOID) card in 2017. She explained that an ex-boyfriend gave her the firearm in 2019. She kept it in a closet at her sister-in-law's home rather than at her own home, as she had an autistic son. On November 16, 2021, her sister-in-law had a party. There were children present, including Ms. Scott's. Ms. Scott therefore took the firearm to her Jeep and placed it under the driver's seat. She did not tell Mr. Hampton, who was talking to Ms. Scott's sister at the time. A few hours later, Mr. Hampton borrowed Ms. Scott's Jeep to drop off a friend.

¶ 14 On cross-examination, Ms. Scott testified that she had one biological daughter and, in November 2021, three foster children. She took the firearm to her sister-in-law's home in 2019 when she got her foster children. Ms. Scott had not been to her sister-in-law's house between then and the party, as they had been "having difficulties." She believed the firearm could hold 15 rounds, could not pronounce the name of the manufacturer, and did not know the model. She never had a case or holster for the firearm.

¶ 15 Before Mr. Hampton was arrested, Ms. Scott was on Facetime with him. She testified that she did not tell him in that conversation about the firearm in the Jeep. When asked whether she thought it was important to tell him there was a loaded gun in the car, she said that she had been drinking and was under the influence. After Mr. Hampton was arrested, Ms. Scott went to the police station and told officers the firearm was hers. An investigator from the state's attorney's office came to her home later, but she did not give a statement because she was on her way out. The investigator left his contact information, but Ms. Scott did not contact him.

¶ 16 On redirect examination, Ms. Scott identified the firearm Officer Carreon recovered as the one she had placed under the seat in her vehicle, although she noted the "clip" that had been in the firearm was missing. The defense entered a stipulation that Ms. Scott had title to the Jeep and a valid FOID card.

¶ 17 During the jury instructions conference, the court noted the State had proposed an instruction defining AHC. The instruction provided that "[a] person commits the offense of [AHC] when he possesses any firearm after previously being convicted of two qualifying felony offenses." Defense counsel objected that the instruction was improper because it "remove[d] the knowingly portion, the requirement that he have the *mens rea*." The State responded that the instruction tracked the language of the AHC statute and that there would also be a "possession instruction."

The court overruled defense counsel's objection.

¶ 18    The next proposed instruction, to which counsel did not object, was Illinois Pattern Jury Instructions, Criminal, No. 4.16 (4th ed. 2000) (hereinafter IPI Criminal 4th). That instruction provided that "[a] person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing ***." *Id.*

¶ 19    In closing argument, the State referenced both actual and constructive possession, although it spent more of its argument explaining why the jury should find that Mr. Hampton had "constructive possession." The State also noted that defense counsel repeatedly argued that, to find Mr. Hampton guilty, the jury would need to find that he knew the firearm was in the Jeep. In rebuttal, the State argued that Mr. Hampton "leaned forward because of this firearm that he had in the car that he knew he wasn't supposed to have."

¶ 20    The court issued the jury instructions and released the jury for deliberations around 5:39 p.m. At about 7:30 p.m., the jury sent a note asking if the firearm was registered to Ms. Scott or, if not, "registered in general." The parties agreed the court should answer that the jurors had the instructions on the law and should continue to deliberate. At 7:55 p.m., the jurors sent another note stating that they were not unanimous—"[p]arties have indicated there is nothing that can change their opinion"—and asking what to do. The court instructed them to continue deliberating. Around 8:57 p.m., the court released the jury for the night. The next morning, the jury began deliberating again around 10:35 a.m. At 1:57 p.m., the jury reached a verdict and found Mr. Hampton guilty of AHC.

¶ 21    Mr. Hampton filed a motion for a new trial in which he did not specifically argue that the court erred in failing to instruct the jury that the State had to prove he "knowingly" possessed the

firearm. The court denied the motion and sentenced Mr. Hampton to six years in prison.

¶ 22                              II. JURISDICTION

¶ 23    Mr. Hampton was sentenced on January 12, 2023, and he filed his notice of appeal the same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb. 6, 2013) and Rule 606 (eff. Mar. 12, 2021), governing appeals from final judgments in criminal cases.

¶ 24                              III. ANALYSIS

¶ 25    On appeal, Mr. Hampton argues that the trial court violated his right to a fair trial by refusing his request to instruct the jurors that, to find him guilty of AHC, they had to find that he "knowingly" possessed a firearm. Mr. Hampton asserts that as the jury instructions failed to inform the jury of that required mental state, an element of the offense, the instructions failed to accurately convey the applicable law. The parties agree that, where, as here, the issue is whether the jury instructions accurately stated the law, our standard of review is *de novo*. *People v. Hartfield*, 2022 IL 126729, ¶ 45.

¶ 26    Initially, the State argues that Mr. Hampton has forfeited this issue by failing to raise it in his posttrial motion. See *People v. Brand*, 2021 IL 125945, ¶ 32 (noting that, to preserve alleged error for review, a defendant must both specifically object at trial and raise the issue in a posttrial motion). Mr. Hampton argues that the issue was preserved for appeal, as counsel objected to the instruction at trial, and the trial court's error implicates his due process right to a fair trial and is therefore constitutional and cannot be forfeited. See *People v. Cregan*, 2014 IL 113600, ¶ 16 ("constitutional issues that were properly raised at trial and may be raised later in a postconviction petition" are not subject to forfeiture for failure to file a posttrial motion). Alternatively, he asks us to review the issue for plain error or to conclude that his trial counsel provided ineffective

assistance by failing to preserve the issue.

¶ 27    Because we find that Mr. Brown's claim of error succeeds on the basis of first prong plain-error, we need not reach these alternative bases for avoiding forfeiture. Under the plain-error doctrine, we may review a forfeited claim where a clear or obvious error occurred and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *People v. Pacheco*, 2023 IL 127535, ¶ 55; see also Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013) (noting that substantial defects in jury instructions "are not waived by failure to make timely objections thereto if the interests of justice require"). The first step in plain-error review is determining whether an error occurred. *Pacheco*, 2023 IL 127535, ¶ 55.

¶ 28    Jury instructions are intended to help jurors properly apply the law to the evidence presented and reach a correct verdict. *People v. Hudson*, 2023 IL App (1st) 192519, ¶ 67; *People v. Falco*, 2014 IL App (1st) 111797, ¶ 15, *overruled on other grounds by People v. Ramirez*, 2023 IL 128123. Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) provides that, when the Illinois Pattern Jury Instructions (IPI) contain an applicable instruction, that instruction "shall be used, unless the court determines that it does not accurately state the law." *Falco*, 2014 IL App (1st) 111797, ¶ 15. Where no applicable IPI instruction exists, the court has discretion to give a nonpattern instruction. *Id.* The nonpattern instruction "should be simple, brief, impartial, and free from argument." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013).

¶ 29    At the time of Mr. Hampton's trial, the IPI did not contain an instruction defining AHC or listing its elements. The court therefore had no choice but to give a nonpattern instruction

explaining what the State had to prove to convict Mr. Hampton of AHC. The instruction the court gave provided that "[a] person commits the offense of [AHC] when he possesses any firearm after previously being convicted of two qualifying felony offenses."

¶ 30    In our view, this instruction did not accurately state the law because it failed to convey to the jury that it had to find that Mr. Hampton knowingly had possession of the gun. Section 24-1.7(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.7(a) (West 2020)) provides that a person commits AHC when he receives, sells, possesses, or transfers a firearm after having been convicted of two or more qualifying offenses. The statute does not expressly provide that the defendant must "knowingly" possess a firearm, nor does it require any other mental state. See *id.* But since this is clearly not an absolute liability offense, a mental state must be inferred. See *Ramirez*, 2023 IL 128123, ¶¶ 20-22.

¶ 31    Our supreme court addressed this issue recently in *Ramirez*. The court held there that, where a defendant is charged with possession of a defaced firearm, the State is required to prove the defendant's knowledge of both the possession and the defacement. *Id.* ¶ 25. As the court recognized, where a statute does not prescribe a mental state or create an absolute liability offense, the applicable mental state is either intent, knowledge, or recklessness. *Id.* ¶ 22. As the *Ramirez* court further explained, where an offense is possessory in nature and the statute does not include a specific mental state, "knowledge is the appropriate mental state." *Id.* Thus, as *Ramirez* makes clear, the elements of AHC include both (1) knowing possession of a firearm and (2) two or more prior qualifying convictions. *People v. Wallace*, 2023 IL App (1st) 200917, ¶ 38 (citing *Ramirez*, 2023 IL 128123, ¶ 22); see also 720 ILCS 5/4-2 (West 2020) (noting that possession is a voluntary act only if "the offender knowingly procured or received the thing possessed, or was aware of his control thereof for a sufficient time to have been able to terminate his possession").

¶ 32    Here, the court's jury instruction provided that a person commits AHC "when he possesses any firearm after previously being convicted of two qualifying felony offenses." The instruction did not specify that the person must "knowingly" possess the firearm. Nor did it, or any other instruction, otherwise indicate that knowledge was an element of AHC. The jury instructions therefore failed to apprise the jury of an essential element of the charged offense.

¶ 33    The State argues that the instruction was sufficient because it tracked the statute, which also does not provide a specific mental state. The State cites *People v. Garland*, 254 Ill. App. 3d 827, 832 (1993), for the "general rule" that "instructing the jury in the elements of an offense as the offense is defined in the statute is sufficient." Mr. Hampton responds that *Garland* rests on an "outdated" statute, which has since been amended to explicitly include a mental state, and an "antiquated" distinction between general and specific intent crimes. We need not decide in this case whether *Garland* is still good law since the court recognized there that "the failure to include a mental state in the jury instructions is grounds to reverse a conviction where the record reveals that the principal contested issue was [the] defendant's mental state." *Id.* at 833. Certainly, this was the principal contested issue in this case.

¶ 34    The State also argues that the instructions, as a whole, accurately stated the law because the instructions given to the jury defined possession as follows:

> "Possession may be actual or constructive. A person has actual possession when he has immediate and exclusive control over a thing. A person has constructive possession when he lacks actual possession of a thing but he has both the power and the intention to exercise control over a thing ***." IPI Criminal 4th No. 4.16.

¶ 35    While we agree with the State that an "intention to exercise control" likely encompasses knowledge, the instructions also allowed the jury to find Mr. Hampton guilty based on actual,

rather than constructive, possession. Certainly, a defendant could have immediate and exclusive control over a firearm without necessarily knowing that it is there. Where, as here, the jury could have found actual *or* constructive possession, the fact that a finding of constructive possession would encompass a finding of knowledge simply does not cure the deficiency in the AHC instruction.

¶ 36 We must next determine whether the error in the instructions satisfies either prong of the plain-error doctrine. We find there was plain error under the first, "closely balanced" prong. As our supreme court has made clear, there is "plain error" where "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." (Internal quotation marks omitted.) *Pacheco*, 2023 IL 127535, ¶ 55. To determine whether evidence was closely balanced, we "evaluate the totality of the evidence and conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. The defendant bears the burden of persuasion. *Pacheco*, 2023 IL 127535, ¶ 55.

¶ 37 The State and Mr. Hampton presented two competing versions of events, relative to whether Mr. Hampton knew the firearm was under his seat in the vehicle. On one hand, Officer Carreon testified that he observed Mr. Hampton lean toward the floor, Mr. Hampton appeared nervous and repeatedly refused to exit the vehicle, and, when he did exit the vehicle, Officer Carreon found the firearm underneath the driver's seat where he had seen Mr. Hampton reach.

¶ 38 On the other hand, Mr. Hampton told Officer Carreon that there were no firearms in the vehicle, the vehicle was his "girl's," the firearm was not visible until Officer Carreon leaned down to search under the seat, and Mr. Hampton's girlfriend Ms. Scott testified that both the firearm and the vehicle belonged to her. Ms. Scott further testified that she had placed the firearm in the vehicle

to remove it from a party with children. She was under the influence of alcohol at the time and did not tell Mr. Hampton what she had done, and Mr. Hampton borrowed her vehicle to drop off a friend. The parties stipulated that Ms. Scott had title to the vehicle and a valid FOID card. No forensic evidence connected Mr. Hampton to the firearm.

¶ 39 The jury might have believed Ms. Scott, or it might have accepted the State's circumstantial evidence that Mr. Hampton had placed the gun under the seat. No extrinsic evidence corroborated or contradicted either version of events. Alternatively, one or more jurors may have believed that it did not matter whether Mr. Hampton knew the gun was there, since he was driving a car with a gun under the driver's seat, and this gave him immediate and exclusive control over the gun. Thus, Mr. Hampton could have been found guilty based on actual possession and the incomplete and therefore incorrect statement of the law set out in the AHC instruction.

¶ 40 During deliberations, the jurors sent a note asking whether the firearm was registered to Ms. Scott or "registered in general." About half an hour later, they sent another note indicating that they were deadlocked. The court sent the jurors home for the night, and they deliberated for several more hours the next day before finding Mr. Hampton guilty. The jurors' notes indicate that they were struggling to reach a consensus on whether the State had proven its case. See *People v. Walker*, 211 Ill. 2d 317, 342 (2004) (relying on notes and questions sent by the jury to find that improper evidence "tipped the scales").

¶ 41 The State points out both that the indictment charged Mr. Hampton with knowingly or intentionally possessing a firearm and the court read that language to the prospective jurors, and that the parties repeatedly indicated in their opening statements and closing arguments that the jury would have to find Mr. Hampton knew of the firearm's presence to find him guilty. The State argues that this rendered any deficiency in the instructions harmless. But when the jury indicated

it was deadlocked, the court instructed it to look again *to the jury instructions*. It also admonished the jurors, as it always does, that *it* would instruct them on the law, that the law they should apply to the case was stated in the jury instructions, and that the opening and closing arguments made by the lawyers did not constitute evidence and should be "disregarded" if not based on the evidence.

¶ 42    "Omitting an element of the offense from a jury instruction is harmless if the reviewing court determines, beyond a reasonable doubt, that the error did not contribute to the verdict." *People v. Lindmark*, 381 Ill. App. 3d 638, 656 (2008), *abrogated by People v. Bailey*, 2014 IL 115459; see *People v. Saraceno*, 341 Ill. App. 3d 108, 116 (2003) (where evidence was closely balanced, State could not show that error in jury instruction was "harmless beyond a reasonable doubt"). We are not convinced that the trial court's refusal to instruct the jury on the principal contested issue of Mr. Hampton's knowledge, when the evidence was closely balanced and the jury indicated that it was struggling to reach a verdict and was told to review the jury instructions, was harmless.

¶ 43    We note that double jeopardy principles do not bar retrial, as viewing Officer Carreon's testimony and body-camera footage in the light most favorable to the State, the trial evidence was sufficient for a rational juror to find that Mr. Hampton had knowledge that he possessed the gun and was therefore guilty. See *People v. Drake*, 2019 IL 123734, ¶¶ 20-21 (double jeopardy does not bar retrial when conviction is overturned due to procedural error unless trial evidence, viewed in light most favorable to the prosecution, was insufficient to sustain the conviction). Thus, we remand this case for a new trial.

¶ 44    Finally, while the State does not expressly rely on this, both parties address the fact that, subsequent to Mr. Hampton's trial, IPI instructions were promulgated that now define AHC in the

same way the trial court did in this case. See Illinois Pattern Jury Instructions, Criminal, Nos. 18.07B, 18.08B (approved Feb. 3, 2023) (hereinafter IPI Criminal Nos. 18.07B, 18.08B). The instructions provide (1) that a person commits AHC when he receives, sells, possesses, or transfers any firearm after having been convicted of two qualifying offenses and (2) that to sustain a charge of AHC, the State has to prove (a) that the defendant received, sold, possessed, or transferred a firearm and (b) that he had previously been convicted of two qualifying offenses. *Id.* Thus, the IPI instructions promulgated for AHC after Mr. Hampton's trial do not include the knowledge requirement we find necessary here.

¶ 45 The dissent finds this compelling. We agree with the dissent that there is a rebuttable presumption that IPI instructions accurately reflect the law. Our supreme court rules require that "the IPI Criminal instruction shall be used, unless the court determines that it does not accurately state the law." Ill. S. Ct. R. 451(a) (eff. Apr. 8, 2013). However, Rule 451(a) also provides that a trial court may modify an IPI instruction where it does not accurately state the law. *Id.*; *People v. Bannister*, 232 Ill. 2d 52, 81 (2008); see *People v. Ortiz*, 2017 IL App (1st) 142559, ¶ 50 (non-IPI instruction should be used if IPI instruction is inaccurate). As our supreme court has recognized, pattern jury instructions, while extremely important and valuable to the administration of justice in this state, "are not exempt from challenge." *Powers v. Illinois Central Gulf R.R. Co.*, 91 Ill. 2d 375, 385 (1982). Such instructions are not judicially approved in advance, and "[a]n instruction is approved or rejected only after it has been judicially questioned and considered." *Id.*

¶ 46 Our judicial examination of IPI Criminal Nos. 18.07B, 18.08B leads us to conclude that they do not correctly state the law. As we explain above, the gun possession element of AHC can only be met where a defendant has knowledge that he is in possession of a gun. While that is not explicit in the AHC statute, as Mr. Hampton notes, all of the other IPI instructions in Rule 18,

which focus exclusively on weapons offenses, do require proof of knowledge or intent to convict. This includes IPI instructions for crimes that do not include a mental state in the relevant statute. For example, Illinois Pattern Jury Instructions, Criminal, No. 18.17 (approved July 28, 2023) (hereinafter IPI Criminal No. 18.17) provides: "A person commits the offense of unlawful possession of [(firearms) (firearm ammunition) (handguns)] when he *** is under 18 years of age and knowingly has in his possession a [(firearm of a size) (handgun)] which may be concealed upon his person." This, despite the fact that the corresponding statute provides only that "(a) A person commits the offense of unlawful possession of firearms or firearm ammunition when: (1) He is under 18 years of age and has in his possession any firearm of a size which may be concealed upon the person[.]" 720 ILCS 5/24-3.1 (West 2020). The committee note to IPI Criminal No. 18.17 makes this clear, stating: "Although Section 24-3.1 does not include a mental state, *any possession must be knowing*." (Emphasis added.) IPI Criminal No. 18.17, Committee Note. Thus, regardless of whether the statute contains an express mental state, one is required by all of the IPI instructions on weapons offenses, except for AHC.

¶ 47    Neither of the parties has ventured an explanation for the omission of a mental state in the IPI instructions for this one offense. The notes on the IPI instructions, which are often helpful, provide no explanation. In short, we are at a loss for why the new IPI instruction on AHC does not include this knowledge requirement. It is our role, as a court, to determine whether the instruction given here complied with the law, and we find that it did not, whether or not it corresponds with a later-promulgated pattern jury instruction. Obviously, we urge the committee to address this as soon as possible. We also express no opinion on whether, in future cases, the failure to give an instruction that includes the knowledge requirement will require reversal based on the facts of the case.

¶ 48                                    IV. CONCLUSION

¶ 49    For the foregoing reasons, we reverse the judgment of the circuit court of Cook County

and remand for a new trial.

¶ 50    Reversed and remanded.


¶ 51    JUSTICE NAVARRO, dissenting:

¶ 52    I agree with the majority's analysis that rejects the State's forfeiture argument that Mr.

Hampton failed to raise his claim in his posttrial motion.

¶ 53    However, I respectfully disagree with the majority's holding that the instructions given in

this case did not accurately state the law. As has been discussed, at the time of Mr. Hampton's

trial, the IPI did not contain an instruction for AHC. As a result, the court gave a non-IPI instruction

for AHC. The instructions the court gave were the same instructions later promulgated after the

conclusion of Mr. Hampton's trial. See IPI Criminal Nos. 18.07B, 18.08B.

¶ 54    Trial courts are directed to use the IPI instructions whenever possible and to only use non-

IPI instructions when necessary. See Ill. S. Ct. R. 451 (eff. Apr. 8, 2013). In this instance, the court

used a non-IPI instruction for AHC that later became the IPI. See IPI Criminal Nos. 18.07B,

18.08B. While IPI instructions are not exempt from challenge, I do not believe that the presumption

that the IPI instructions accurately reflect the law was rebutted here where the jury was instructed

on both AHC and possession. See IPI Criminal 4th No. 4.16. I agree with the majority that Mr.

Hampton's mental state was a contested issue at trial. However, the AHC instruction, given in

conjunction with the possession instruction and taken with the indictment, renders any deficiency

in the instructions in defining a mental state harmless. See *People v. Tompkins*, 2023 IL 127805,

¶ 56 (an error in a jury instruction is harmless if it is demonstrated that the result of the trial would

not have been different had the jury been properly instructed). Thus, I respectfully dissent.

---

### *People v. Hampton*, 2024 IL App (1st) 230171

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CR-3; the Hon. Peggy Chiampas, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Kara Kurland, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Retha Stotts, and Lynnette Cusack, Assistant State's Attorneys, of counsel), for the People. |