THIRD DIVISION

December 31, 1997

No. 1-95-3383

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

MELVIN REYNOLDS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

94 CR 23498

Honorable

Fred G. Suria,

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Melvin Reynolds was indicted on 24 counts involving several  charges.  When the case went to the jury, 12 counts embracing 4 offenses remained: 3 for aggravated sexual abuse, 3 for sexual assault, 2 for child pornography, and 4 for obstruction of justice.  The jury was given general verdict forms--"guilty" and "not guilty"--for each of the four offenses.  The jury returned a general "guilty" verdict on each of the offenses.

Reynolds was sentenced to four years' imprisonment for sexual assault, a concurrent four years for child pornography, and a consecutive one year for obstruction of justice.  The trial court found that the sexual abuse conviction merged with that for sexual assault and did not impose a sentence.  We affirm.

A criminal investigation of defendant began when Beverly Heard told Chicago police, on June 3, 1994, that in 1992 and 1993 she had consensual sexual intercourse with defendant while she was 16 and 17 years of age.  

In late June and early July, 1994 Heard appeared before a grand jury and repeated her allegations.  On August 19, 1994, defendant was indicted.

The indictment alleged, on the three aggravated criminal sexual abuse charges, that defendant had sexual intercourse with Beverly Heard, beginning in June 1992, when Heard was 16 years old, and continuing until she turned 17 in November 1992.  At trial, the State offered a tape recording of a conversation between Heard and defendant made in 1994.  Defendant and Heard in this conversation allegedly discussed their sexual relationship.  The case was under investigation with the cooperation of Heard at the time the recording was made.   

Heard testified at trial that a relationship began with defendant when he introduced himself to her on the street in June 1992.  She said that he asked her to dinner about a week later.  About a week after that dinner she said they had sex at an apartment in Riverdale.  This began a pattern in which they had sex two or three times each week from June 1992 until November 1992, and then less frequently from November 1992 until September 1993.  Defendant gave her $100 or $150 almost every time they were together.

Heard testified that she met Sophia Green, a friend of defendant, in late November 1992.  She testified that the three of them had sex together three times, twice in defendant's office and once at a hotel.  

Heard testified that she worked as a political campaign volunteer for defendant in the summer of 1993 for about three weeks.  Heard also testified that, in the fall of 1992, defendant suggested that Heard transfer to a private high school and that he would pay the tuition.  She enrolled and graduated from the school, but never paid tuition.  

Defendant testified.  He denied having sexual intercourse with Heard.  He admitted that the recorded conversation played to the jury happened, but said it was only "phone sex" or "fantasy sex."

The child pornography charge was also based on a taped conversation between Heard and defendant.  On the tape, Heard said that she had a 15-year-old friend named Theresa she would like to introduce to defendant because Theresa might want to have sex with defendant.  Theresa did not exist.  She was fabricated  at the suggestion of the police conducting the investigation.  Defendant responded that he did not think he wanted to have sex with Theresa because she was too young.  He then asked to see a picture of Theresa before meeting her.  He suggested that Heard buy a Polaroid camera and take some pictures of Theresa.  He told Heard he would reimburse her for the camera.  Defendant then stated: "[T]hey [(the pictures)] [don't] have to be face shots *** but mainly just *** crotch and titties."

The State offered evidence that snapshots of women, never asserted to be underage, in various stages of undress, were found on defendant's office desk.  The State argued that these photographs were relevant because they demonstrated the kind of photographs defendant asked Heard to take.  The defense objected to this evidence as unduly prejudicial "other crimes or bad acts" evidence.  The trial court allowed the photos to be described, but did not allow them to be published to the jury during the trial.

Defendant admitted in his testimony that he asked for the photographs of "Theresa," but he asserted that the conversation was  fantasy sex talk and that he never intended or expected Heard to take photographs or do anything else.  The prosecution argued that the offense of child pornography is defined in such a way that intent is not required, and that the jury should not be instructed that a mental state is required for the crime.  Over  defense objection, the judge tendered an instruction to the jury that is set out and discussed in our disposition of defendant's fifth issue on appeal.

The indictment charged defendant with four separate acts of obstruction of justice: (1) that he gave a false statement to the police and prosecutor in that he induced Beverly Heard to file a false statement (retracting her allegations as to sex with defendant) on or about June 22, 1994; (2) that he furnished a false statement to the police and prosecutor in that he induced Heard to file a false statement (retracting her allegations of sex with defendant) on or about June 29, 1994; (3) that he and codefendant Eddie McIntyre induced Heard to leave the state during a criminal investigation; and (4) that he and McIntyre induced Heard to conceal herself from authorities.  Each of these charges was represented by a separate count.

Sarah Rodriguez, defendant's secretary, testified that defendant told her to type a statement that Barbara Ennis (Heard's mother) would dictate to her by telephone.  Rodriguez did so.  Rodriguez testified that she went to Tennessee, where she gave the statement to Ennis for Heard's signature.  Rodriguez then faxed a copy of the signed statement dated June 22, 1994, to defendant in Washington, D.C., and gave the signed statement to Tavis Grant, an associate of defendant.

The State offered evidence that the June 29 statement was dictated to Rodriguez by defendant.  The evidence showed that Heard signed the June 29 statement and gave it to her attorney.  There was no evidence presented that this statement was ever "furnished" to the police or the State's Attorney until the State subpoenaed Heard's attorney to produce it.

To contradict the charge of concealing Heard by inducing her to leave Illinois, Heard testified that in the course of the investigation she went to Tennessee because she no longer wanted to be part of the investigation.  She said the trip was her idea.   During deliberation, the jury asked for all photographic exhibits.  Over defense objection, the court ruled that the jury could see those photographs that appeared to show underage naked women.  Defendant then asked, and the court allowed, the photographs of all the women to go to the jury, including those that appeared to show women who were not minors.    

The jury, during deliberations, asked for a "legal definition of a position of trust, authority or supervision in relation to the victim."  The judge responded, "use your common sense understanding of those terms."

On August 22, 1995, the jury returned a general verdict of guilty on each of the charges.

Defendant raises eight issues on appeal: 

(1)  did the trial court improperly admit several items and instances of "other crimes or wrongful conduct" evidence?

(2) whether the evidence that defendant held a "position of trust, authority or supervision" in relation to the victim was sufficient to sustain defendant's conviction of criminal sexual assault; and, is the term "position of trust"  unconstitutionally vague, and did the judge err in refusing the jury's request to define this term?

(3) was defendant denied his right under the United States and Illinois Constitutions to a unanimous jury verdict on the charge of obstruction of justice?

(4) was defendant denied his right under the United States and Illinois Constitutions to a unanimous jury verdict on the charges of sexual assault and aggravated sexual abuse?

(5) was defendant's conviction of child pornography invalid in light of both the indictment's failure to allege a mental state and the judge's failure to instruct the jury that a mental state is an element of the offense?

(6) did the prosection use its peremptory challenges in a racially discriminatory way, in violation of 
Batson v. Kentucky
, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986)?   

(7) was the jury improperly allowed to learn that a defense witness had taken and failed a polygraph test? 

(8) did the court have jurisdiction and venue over the child pornography charge in light of the fact that defendant was not within Illinois when he spoke the words that were the basis for the charge?

 We discuss issues two and three in this opinion.  To comply with Supreme Court Rule 23 (166 Ill. 2d R. 23), our disposition of the remaining issues is omitted from the published opinion.  For a disposition of those issues, see the order filed with the clerk of the court in 
People v. Reynolds
, Docket No. 1-95-3383.(ADD Filing DATE.) 

Nonpublishable material under Supreme Court Rule 23 omitted.

Defendant argues that his conviction for criminal sexual assault must be reversed because there was no evidence that he held a "position of trust, authority or supervision" in relation to Heard.  Defendant contends that the only reason for alleging he held a position of trust was his role as a public figure.  

The standard for reviewing the sufficiency of evidence supporting a criminal conviction is whether, after considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
People v. Wittenmyer
, 151 Ill. 2d 175, 190, 601 N.E.2d 735 (1992).  

The Criminal Code of 1961 provides that a person commits criminal sexual assault if he "commits an act of sexual penetration with a victim who was at least 13 years of age but under 18 years of age when the act was committed and the accused was 17 years of age or over and held a position of trust, authority or supervision in relation to the victim."  720 ILCS 5/12-13(a)(4) (West 1994).  The phrase "position of trust, authority or supervision" is not defined in the statute.

Defendant argues in his brief that the phrase "position of trust, authority or supervision" was intended to reach only relationships that are 
in loco parentis
.  But defendant conceded during oral argument before this court that the term is not so limited, and we agree.  The term 
in loco parentis
 describes "a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation."  
People v. Warner
, 98 Ill. App. 3d 433, 437, 424 N.E.2d 747 (1981); 
Busillo v. Hetzel
, 58 Ill. App. 3d 682, 684, 374 N.E.2d 1090 (1978).  Had the legislature intended to reach only 
in loco parentis
 relationships, it would have said so, as it has in other statutes.  See, 
e.g.
, 750 ILCS 60/103(1) (West 1994) (Illinois Domestic Violence Act of 1986); 735 ILCS 5/13-203.1 (West 1994) (Code of Civil Procedure); 725 ILCS 5/112A-14(b)(5)(ii) (West 1994) (Code of Criminal Procedure of 1963);  755 ILCS 5/9-8(e) (West 1994) (Probate Act of 1975).  

Defendant next urges us to borrow the meaning of "position of trust" from section 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a)(14) (West 1994)), which gives the following nonexclusive list of relationships that the legislature intended to cover in the term "position of trust or supervision": "family member ***, teacher, scout leader, baby sitter, or day care worker."  Defendant argues that each of these figures is entrusted with parental-type responsibilities for the welfare of the child.  He argues that Illinois cases recognize that section 12-13(a)(4) of the Criminal Code, like section 5-5-3.2 of the Unified Code of Corrections, protects a child from two types of relationships: (1) those in which it can be expected that the adult will be able to exert undue influence over the child; and (2) those in which the adult's position affords a heightened opportunity for a sexual assault to happen.

Defendant then argues that his conviction is "completely at odds" with many Illinois cases in which defendants were found to occupy a position of trust, authority or supervision under either section 12-13(a)(4) of the Criminal Code of 1961 or section 5-5-3.2(a)(14) of the Unified Code of Corrections.

Nonpublishable material under Supreme Court Rule 23 omitted.

Defendant points out that in each of the cases cited in his brief the relationship between the defendant and the victim predated the sexual encounter and also involved an entrustment of the victim, by a parent or society at large, to the care of defendant.  

None of the cases defendant cites interprets section 12-13(a)(4) in a manner that precludes its application here.  Our research reveals that no Illinois court has addressed the statute's application to a relationship such as the one before us.

In interpreting section 12-13(a)(4), the language of the statute must be given its plain and ordinary meaning.  
DeClerck v. Simpson
, 143 Ill. 2d 489, 492, 577 N.E.2d 767 (1991).  Accordingly, Illinois courts construing section 12-13(a)(4) have given the terms "trust," "authority" and "supervision" their common dictionary meanings.  See 
People v. Secor
, 279 Ill. App. 3d 389, 396, 664 N.E.2d 1054 (1996); 
People v. Kaminski
, 246 Ill. App. 3d 77, 81, 615 N.E.2d 808 (1993).  In 
People v. Kaminski
, the court stated that "supervise" has been defined to mean "'superintend, oversee.'"  246 Ill. App. 3d at 81, quoting Webster's Ninth New Collegiate Dictionary 1185 (1985).  In 
Secor
, the court defined "trust" as "'[c]onfidence in the integrity, ability, character, and truth of a person ***[;] [s]omething committed into the care of another.'"  
Secor
, 279 Ill. App. 3d at 396, quoting American Heritage Dictionary 1300 (2d coll. ed. 1985).  The 
Secor
 court defined "authority" as "'[t]he power to command, enforce laws, exact obedience, determine, or judge.'"  
Secor
, 279 Ill. App. 3d at 396, quoting American Heritage Dictionary 142 (2d coll. ed. 1985).

In finding that a one-time overnight host fell within section 12-13(a)(4), the 
Secor
 court placed great weight on facts that were "likely to generate mutual trust."  
Secor
, 279 Ill. App. 3d at 394.  The court noted:

"[The victim] was not a stranger to the defendant; he was the child of neighbors of long standing and a friend of his son.  Moreover, the circumstances of the crime suggest that defendant was aware of his influence over [the victim]."  
Secor
, 279 Ill. App. 3d at 394.

We agree with defendant that his role as a public official does not alone create a position of trust, authority or supervision in relation to Heard.  The language of the statute does not suggest that the position of trust, authority or supervision may result from the role of the offender alone, but that it must exist "in relation to the victim."  720 ILCS 5/12-13(a)(4) (West 1994).  But there was ample evidence introduced at trial to support a finding that defendant developed a position of trust, authority or supervision in relation to Heard.  Heard worked as a volunteer on defendant's campaign for three weeks.  Defendant sometimes served as her "mentor," a word used in his own statements to describe their relationship.  He arranged for her enrollment in a private school and, according to Heard's testimony, said he would pay the tuition.  Evidence was introduced that he was the person the school would call when Heard had problems there.  Defendant testified that he counseled Heard when notified by school officials that she might drop out of school.  Defendant gave Heard money virtually every time they met.  We are aware that more than one inference can be drawn from this passing of money, but among the inferences is that defendant was assuming some financial responsibility for Heard.  When more than one inference may be drawn, the question is one of fact for the jury.  See 
People v. Besser
, 273 Ill. App. 3d 164, 167, 657 N.E.2d 454, 456 (1995).  These aspects of the relationship show that a jury could have found that defendant developed and occupied a position of trust, authority, or supervision in relation to Heard.

We reject defendant's next argument that the statute does not apply to positions of trust, authority, or supervision that develop after the onset of a sexual relationship.  A plain reading of the statute does not reveal such a restriction.  Defendant argues that "[t]o hold that this situation falls within the ambit of the *** statute would mean that virtually every more-than-short-term relationship between an older man and a teenage girl would necessarily violate the statute, since some sort of 'trust' almost always develops between two parties to such a relationship."  

The argument includes a debatable assumption rooted in psychology, not law, and one that we are not prepared to read into the statute.

We hold only that an adult who has a sexual relationship with a minor cannot shield himself from this statute by showing that his first sex with the minor took place before there was evidence of trust, authority, or supervision.  Under this reading, if a defendant occupies a position of trust, authority or supervision at any time when he engages in sexual intercourse with a minor 13 to 17 years old, his conduct is prohibited by section 12-13(a)(4).  If the evidence establishes that the first sexual act happens before trust is established, or authority or supervision is exercised, the defendant is not prohibited from arguing to the trier of fact that the sexual relationship alone is the reason for claiming a relationship of trust, authority or supervision.  But here the State offered evidence of ongoing financial and educational support and nonsexual mentoring.  The trier of fact must decide whether these nonsexual elements of the relationship amounted to trust, authority or supervision when the sexual abuse happened and placed the conduct within the scope of the statute.

Defendant next argues that the term "position of trust" is unconstitutionally vague as applied to him.  He stresses the term "position of trust" because he asserts that the State relied only on this term in trying the case.  We reject this contention because the State set out all three terms in the indictment and introduced evidence to support all three.  

Under both the United States and Illinois Constitutions, a law will be held unconstitutionally vague if a person of ordinary intelligence is not given a reasonable opportunity to know what is prohibited so that he can act accordingly
, or if the statute fails to provide explicit standards for application such that law enforcement officials are free to use arbitrary and discriminatory enforcement methods.  
Grayned v. City of Rockford
, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99 (1972); 
People v. Burpo
, 164 Ill. 2d 261, 265-66, 647 N.E.2d 996 (1995).  Absent contrary legislative intent, a court will assume the words used in a statute have their ordinary and popularly understood meanings when assessing the constitutionality of the statute.  
People v. Fabing
, 143 Ill. 2d 48, 54, 570 N.E.2d 329 (1991).  Section 12-13(a)(4) uses plain language and cannot be considered so vague that people of "common intelligence must necessarily guess at its meaning and differ as to its applicability."  
People v. Williams
, 133 Ill. 2d 449, 454, 551 N.E.2d 631 (1990).  

To support his position that the statute is unconstitutionally vague, defendant cites Representative Countryman's comments during House debates on the bill.  Countryman stated, "we don't know what a position of trust or authority is" and "[the committee has not] met the Constitutional requirement of being sufficiently definite *** for this to be an enforceable law under the Constitution of the State of Illinois."  85th Ill. Gen. Assem., House Proceedings, June 30, 1988, at 20 (statements of Representative Countryman).  The State points out that Representative Olson disagreed and stated "I think the definitions are in a phase where they can be readily interpreted."  85th Ill. Gen. Assem., House Proceedings, June 30, 1988, at 21 (statements of Representative Olson).  The differing opinions of these two legislators illustrate why courts generally give conflicting statements by legislators in a floor debate little weight in searching for the intent of the entire legislative body.  
People v. R.L.
, 158 Ill. 2d 432, 442, 634 N.E.2d 733 (1994).  

We find 
Secor
 instructive.  
Secor
, 279 Ill. App. 3d 389, 664 N.E.2d 1054.  In 
Secor
, the defendant was convicted of criminal sexual assault after sex with a teenager who was a "one-time over-night" guest at his house.  
Secor
, 279 Ill. App. 3d 389, 664 N.E.2d 1054.  In rejecting defendant's vagueness argument, the
 court held that the terms "trust," "authority," and "supervision" are sufficiently definite both to warn potential defendants of the type of conduct prohibited and to channel the discretion of police, judges and juries.  
Secor
, 279 Ill. App. 3d at 396.  The 
Secor
 court concluded:  

"[I]n enacting section 12-13(a)(4), the legislature sought to prevent sex offenses by those whom a child would tend to obey *** as well as those in whom the child has placed his trust ***.  It is the trust that makes the child particularly vulnerable, and it is the betrayal of that trust that makes the offense particularly devastating.  Due process does not require a 'laundry list' of all such positions of trust, authority or supervision; where enumeration of all such positions is impractical, the legislature may reasonably choose sufficiently broad language to encompass such situations."  
Secor
, 279 Ill. App. 3d at 396.

Here defendant was a host to Heard several times: at the Riverdale apartment, at a hotel, and at his office.  He engaged in acts that would tend to establish trust: career advice or mentorship, educational help, and financial support.  The statute was sufficient to notify defendant that his conduct could result in a "position of trust, authority or supervision" in relation to Heard.

Defendant next argues that the court abused its discretion when it refused to respond to the jury's request for a legal definition of "trust, authority or supervision in relation to the victim."  A trial court has a duty to provide instruction to the jury when it asks a specific question or requests clarification on a point of law.  
People v. Childs
, 159 Ill. 2d 217, 228, 636 N.E.2d 534 (1994).  

The court instructed the jury to "use your common sense understanding of those terms."  We have already established that the terms are to be given their plain and ordinary meanings.  The court's response was appropriate.

Defendant next contends that the convictions of obstruction of justice, sexual assault, and aggravated sexual abuse must be reversed because he was denied his rights under the United States and Illinois Constitutions to unanimous jury verdicts.  The jury was given general verdict forms for each crime.  

We first note that the record contains no alternate instructions or verdict forms tendered by defendant.  Unless all instructions, both given and refused, are contained in the record, "a claim of error based on the giving or refusal of instructions will not be heard."  
People v. Daily
, 41 Ill. 2d 116, 121, 242 N.E.2d 170 (1968).  This argument is waived.

Even if the issue were properly before us, the trial court did not err.
  When several counts are charged, a general verdict form is sufficient when the various counts state the same transaction.  
People v. Travis
, 170 Ill. App. 3d 873, 892, 525 N.E.2d 1137 (1988); 
People v. Josephine
, 165 Ill. App. 3d 762, 767, 520 N.E.2d 745 (1987).  Defendant cites several Illinois and federal cases 
f
or the proposition that separate verdicts are required for each separate incident alleged.  
United States v. Holley
, 942 F.2d 916 (5th Cir. 1991); 
United States v. Echeverri
, 854 F.2d 638, 643 (3d Cir. 1988); 
United States v. Gipson
, 553 F.2d 453, 456 (5th Cir. 1977); 
People v. Scott
, 243 Ill. App. 3d 167, 612 N.E.2d 7 (1993); 
Josephine
, 165 Ill. App. 3d 762; 
People v. Wurbs
, 38 Ill. App. 3d 360, 347 N.E.2d 879 (1976); 
People v. Diekelmann
, 367 Ill. 372, 11 N.E.2d 420 (1937). 
 As defendant acknowledges, these cases involved multiple transactions.  

Our research reveals no Illinois case defining the "same transaction" in the context of general verdicts.  The State directs us to several instructive cases involving the joinder provision of the Code of Criminal Procedure of 1963, which provides that separate counts may be charged in a single indictment if they "are based on the same act or on [two] or more acts which are part of the same comprehensive transaction."  725 ILCS 5/111-4(a) (West 1994).  Under this statute, courts consider  several factors in determining when multiple acts constitute one transaction: (1) proximity of time and location; (2) existence of a shared common purpose; and (3) similarity of the evidence to establish elements of the offense.  
People v. Jackson
, 233 Ill. App. 3d 1089, 1098, 599 N.E.2d 1192 (1992); 
People v. Mays
, 176 Ill. App. 3d 1027, 1037, 532 N.E.2d 843 (1988).

The reasoning of other states is helpful.  Other states have concluded that when the state proceeds on a theory that defendant engaged in a continuous course of conduct, a separate verdict is not required for each individual occurrence.  
See 
Soper v. State
, 731 P.2d 587 (Alaska App. 1987); 
People v. Winkle
, 206 Cal. App. 3d 822, 253 Cal. Rptr. 726 (1988); 
State v. Spigarolo
, 556 A.2d 112, 210 Conn. 359 (1989)
.  In 
Winkle
, the California Court of Appeals held that a unanimity instruction was not required where the victim testified about a series of similar molestations without identifying specific dates.  
Winkle
, 206 Cal. App. 3d at 830, 253 Cal. Rptr. at 730.  In 
Spigarolo
, the supreme court of Connecticut concluded that the lack of a unanimous jury instruction did not deprive the defendant of his right to a unanimous verdict when the state had proceeded under a theory that the defendant's conduct was "in the nature of a continuing offense."  
Spigarolo
, 556 A.2d at 129, 210 Conn. at 391.  In 
Soper
, the Alaska Court of Appeals held that the trial court did not err in failing to instruct the jury that it must agree on a particular incident of sexual abuse when the victim testified to a "general course of conduct."  
Soper
, 731 P.2d at 591.

We first address defendant's argument relating to the criminal sexual assault and aggravated sexual abuse verdict forms.  Defendant argues that the jury should have been given separate forms for each type of sexual penetration and for each of three identifiable "episodes" of sexual interaction.  He argues that the signed verdicts may not have reflected unanimous agreement on a particular "episode."  

The jury was not required to agree on the specific type of penetration or the specific incident of sexual interaction.  Unable to assert specific dates of sexual activity between defendant and Heard, the State proceeded on a theory that defendant engaged in a continuous course of conduct in violation of section 12-16(d) of the Criminal Code (720 ILCS 5/12-16(d) (West 1994) and section 12-13(a)(4) (West 1994) of the Criminal Code (720 ILCS 5/12-13(a)(4)).  Although defendant asserts there were at least three "episodes" of unlawful conduct alleged, the testimony at trial established an ongoing sexual relationship between defendant and Heard.  The general verdict form was proper.

The State proceeded on a similar theory in relation to the obstruction of justice counts.  The State introduced testimony  to show that defendant's efforts to remove Heard from Illinois and to obtain retractions of her statements were part of a continuous course of conduct to thwart a single prosecution.  The evidence supported obstruction of justice counts as parts of the same transaction, and the general verdict form was proper.

Nonpublishable material under Supreme Court Rule 23 omitted.

Affirmed.

LEAVITT, P.J., and GORDON, J., concur.