2025 IL App (1st) 240134-U

FIFTH DIVISION
December 23, 2025

No. 1-24-0134

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 017251 |
| | ) | |
| AMADO ALVARADO-MORALES, | ) | Honorable |
| | ) | James Novy, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Tailor concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions for predatory criminal sexual assault of a child are affirmed. The evidence was sufficient to prove him guilty beyond a reasonable doubt, and the pattern jury instructions used by the court did not violate his right to a unanimous verdict.

¶ 2    Following a jury trial, defendant Amado Alvarado-Morales was found guilty on two counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and sentenced to 28 years in prison. On direct appeal from those convictions, Mr. Alvarado-Morales argues that (1) the State failed to prove his guilt beyond a reasonable doubt and (2) the pattern jury instructions used at trial violated his sixth amendment right to a unanimous verdict because they

did not require the jurors to agree that a specific instance of alleged sexual conduct underlay each of the charged offenses. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State charged Mr. Alvarado-Morales with four counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and four counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)), for acts he was alleged to have committed with his stepdaughter, C.R., when she was between 10 and 12 years old.

¶ 5     In each of the four counts of predatory criminal sexual assault of a child, the State alleged that Mr. Alvarado-Morales, being over the age of 17, had knowingly committed an act of sexual penetration or contact with C.R. between November 1, 2016, and October 31, 2019, when she was under the age of 13. Count 1 alleged penetration consisting of contact between Mr. Alvarado-Morales's penis and C.R.'s anus, counts 2 and 3 alleged separate instances of penetration consisting of contact between his penis and C.R.'s sex organ, and count 4 alleged contact, for purposes of sexual gratification or arousal, between Mr. Alvarado-Morales's penis and C.R.'s hand. The State nol prossed the aggravated criminal sexual abuse charges just before trial.

¶ 6                                    A. Pretrial Matters

¶ 7     Following a hearing, the court ruled that the State could introduce the video recording of an interview C.R. completed on October 25, 2019, with a forensic interviewer employed by the Chicago Children's Advocacy Center (CCAC). The State ultimately did not publish the videotaped interview to the jury, but defense counsel played portions of it, noted below, during its cross-examination of C.R.

¶ 8                                    B. The Evidence at Trial

¶ 9                                    1. C.R.

¶ 10    C.R., who was 17 years old at the time of the December 4, 2023, trial, testified that she

lived with her mother and three younger siblings. In November 2016, Mr. Alvarado-Morales, whom C.R. identified in court, also lived with them and helped pay for the family's food and rent. He and C.R.'s mother had been in a romantic relationship since C.R. was born, he had lived with them her whole life, and she called him "Dad."

¶ 11    C.R. testified that she was sexually abused by Mr. Alvarado-Morales beginning when she was approximately ten years old. This consisted, she said, of "penetration of his penis," and "inappropriate touching." When asked when the penetration with his penis occurred, C.R. said, "Since I was 11 to 12, I believe, in our house." C.R. explained that, when her mother was either working a night shift or was inside watching television with C.R.'s siblings, Mr. Alvarado-Morales would take C.R. to the back porch and tell her to pull her pants down. Mr. Alvarado-Morales would pull his pants down too and would penetrate her anus with his penis. This happened "at least 8 to 10 times." He also penetrated her vagina with his penis, but that took place in the bedroom that C.R. shared with her sister. Mr. Alvarado-Morales told C.R., "Don't tell anyone or else I'll go to jail" and "[n]either your siblings or you won't have me anymore."

¶ 12    C.R. testified that the encounters on the back porch generally took place after Mr. Alvarado-Morales took her with him to the gym: "We would go to the gym, work out. Then afterwards he would tell me, you know what's going to happen after this. Then we would go to the porch. He would force me." On one occasion she tried to escape and run from him, but Mr. Alvarado-Morales caught her and "forcefully had sex with [her] in the porch." C.R. testified that each instance lasted from two to five minutes, that the penetration was painful, and that Mr. Alvarado-Morales had once also made her touch his penis in the car before they went to the gym.

¶ 13    In October 2019, C.R. told her mother what had occurred because she thought she was pregnant. They went to the police, where C.R. and her mother, who only speaks Spanish, were interviewed for 8-10 minutes by a bilingual female detective. They also went to the hospital, where

3

they learned C.R. was not pregnant, and where she told the doctor who examined her what had happened. On October 25, 2019, C.R. was interviewed, alone, for approximately 45 minutes by a female forensic interviewer with the CCAC, whom she told what had happened "in more detail."

¶ 14    Early in C.R.'s testimony, defense counsel objected, arguing that Mr. Alvarado-Morales was charged with three specific acts of penetration and that allowing the State to elicit testimony that "this happened countless times" improperly introduced other crimes evidence. The State disagreed, pointing out that the indictment and discovery it had tendered made clear it was alleging 10-15 incidents occurring over a period of approximately two years. The State said it would attempt to elicit details about when and where those acts occurred, but C.R. unlikely to be able to say that they took place "on this date and at this time." The trial court overruled the objection.

¶ 15    On cross-examination, C.R. acknowledged that, when she made her initial outcry, her mother was in an advanced state of pregnancy with her little brother, who was Mr. Alvarado-Morales's child. Her mother and Mr. Alvarado-Morales had just broken up, and he had moved out of the family home. She also confirmed on cross examination that the incidents of sexual contact with Mr. Alvarado-Morales sometimes occurred on the porch when other people were inside the house, and sometimes in her bed, while her younger sister was in another bed in the same room.

¶ 16    When asked whether she told the CCAC interviewer that the penetration did not hurt, C.R. said she could not remember. Counsel then showed C.R. a video clip of her 2019 CCAC interview. When the interviewer asked her, "where on your butt did he put his penis in?" C.R. answered "like, where you poop." When asked how that felt, she said "I didn't really feel anything. I just felt something like inside of me. But it didn't hurt. There wasn't really a feeling." C.R. agreed that this was a true and accurate depiction of the interview.

¶ 17    C.R. stated that she told both the detective and the CCAC interviewer all the details that she could remember at the time. She acknowledged, however, that she did not tell the detective

4

that Mr. Alvarado-Morales had once made her touch his penis in the car. Nor did she tell the CCAC interviewer that she once tried to run from the porch. C.R. explained that now she was "remembering more things." She nevertheless agreed that things were generally "fresher in [her] mind" when she spoke to the CCAC interviewer than they were at trial. She agreed that she told the interviewer that Mr. Alvarado-Morales's penis "never was inserted in [her] vagina" and that she was not scared that she was pregnant "because the penetration only happened to [her] butt." Counsel played two additional video clips from C.R.'s CCAC interview, in which she gave answers to this effect. C.R. further agreed that she told the doctor who examined her that she was "unsure of the type of penetration but [she] thought it was [her] butthole."

¶ 18    On redirect examination, C.R. testified that when Mr. Alvarado-Morales penetrated her on the porch it was "from behind," and that this was what she told the CCAC interviewer. When he penetrated her in her bedroom, he would face her. C.R. was given an opportunity to explain the discrepancies pointed out on cross-examination and stated:

> "Now I'm more informed on how you get pregnant, and I said there wasn't any penetration of the vagina. I wasn't informed where these body parts are at. Now I know vagina where it is, anus where it is, you know, my butthole, everything.
>
> I know now that there was penetration of the vagina, and I know now that there could have been the possibility of me getting pregnant. Before those vocabulary words were not in my—you know, I didn't have them. So whatever I said there, I wasn't as informed as I am now."

¶ 19    On re-cross, however, C.R. acknowledged that at 12 years old she "did have some knowledge about how one gets pregnant" because she told the CCAC interviewer that "the butt is where you poop out of," that "the vagina is in the front," and that she knew one could only get pregnant through vaginal penetration.

¶ 20                                        2. Detective Cifuentes

¶ 21    Chicago police detective Juan Cifuentes testified  that he was assigned to this case on October 16, 2019. He contacted C.R.'s mother to schedule a victim sensitive interview at the CCAC. Detective Cifuentes observed C.R.'s October 25, 2019, interview via closed-circuit television from another room at the CCAC.

¶ 22    Mr. Alvarado-Morales was arrested on November 20, 2019, and Detective Cifuentes and his partner questioned him. Mr. Alvarado-Morales was not handcuffed. He was Mirandized and questioned in Spanish, which was both his and Detective Cifuentes's first language, and indicated that he was willing to talk to the detectives, which he did for approximately one hour.

¶ 23    Mr. Alvarado-Morales confirmed that he was born on January 5, 1986, and that he had lived with C.R. and her mother and siblings. Detective Cifuentes testified that "[a]t one point [Mr. Alvarado-Morales] denied that anything was going on," but "finally he said, okay, I'm going to tell you the truth, I masturbated behind [C.R.]." When pressed for more details, he explained that he was positioned behind C.R., with his penis exposed, and her shorts and underwear were pulled down to "a little higher than the knee." Detective Cifuentes relayed to Mr. Alvarado-Morales that at her forensic interview, C.R. said that "[a]t first it was masturbating," but then "she felt [Mr. Alvarado-Morales's] penis pressing her butt." When confronted with this, Mr. Alvarado-Morales revised his story. According to the detective:

> "He said that, yes, his penis did make contact with the butt, but it didn't—he didn't penetrate the butt, just the tip, it was—it couldn't go in. She kept on resisting, like saying it hurts, and I believe she said it hurts, and then he said, okay, and he stopped."

Mr. Alvarado-Morales told Detective Cifuentes that this first happened when C.R. was 10 or 11 years old, and that it happened five times in total. He explained that he always "finished to the side" and "[n]ever on her or inside of her."

6

¶ 24    When asked if his penis ever made contact with C.R.'s vagina, Mr. Alvarado-Morales said "[h]e wasn't sure. He kept on saying maybe it did, but he was not aware if it did or not." He acknowledged taking C.R. to the gym by himself and, when asked about C.R.'s allegation that he had once had her touch his penis in the car, he corrected the detective's version of events, saying, "it didn't happen in front of the house, it happened close to the house." Mr. Alvarado-Morales said that he "exposed his penis, told [C.R.] to look at it, and then eventually she touched it."

¶ 25    Detective Cifuentes recalled that throughout the questioning Mr. Alvarado-Morales remained calm and expressed remorse, saying, "I shouldn't have done this." The detectives did not verbally or physically threaten Mr. Alvarado-Morales, and Mr. Alvarado-Morales was given food and water and allowed to use the restroom. Although, according to the trial transcripts, a video recording of the interview was admitted into evidence, no copy  appears in the record on appeal.

¶ 26    On cross-examination, Detective Cifuentes agreed that he knew Mr. Alvarado-Morales was born in Mexico and did not speak English. He knew that he was required to notify Mr. Alvarado-Morales of his right to have the Mexican consulate informed of his arrest but there was no notation in his report that he had done so. He further agreed that he did not delay the interrogation pending the arrival of a department-authorized interpreter, as is also required when a foreign national has been arrested. He agreed that Mr. Alvarado-Morales was interrogated in a small windowless room with the detectives sitting in front of the only door to the room.

¶ 27    Detective Cifuentes agreed that he was trained in the Reid method of interrogation, which employs psychological tactics to extract a confession. He used this method to both maximize his knowledge of the situation, making Mr. Alvarado-Morales believe the police "already [knew] everything," and to minimize its severity, making him believe that what had occurred was "not that big of a deal." Detective Cifuentes continued to press Mr. Alvarado-Morales, even after he had "made numerous denials," because he did not believe what Mr. Alvarado-Morales had first

said. He agreed that no other investigation was done to corroborate C.R.'s allegations beyond his interview of Mr. Alvarado-Morales.

¶ 28                                      3. Exhibits and Stipulations

¶ 29    C.R.'s birth certificate, stating that she was born on November 1, 2006, and the three video clips from her victim-sensitive interview at the CCAC that defense counsel had played during her cross-examination were entered into evidence.

¶ 30    The parties also stipulated that, if called as a witness, Dr. Sohaib Amjad would testify that on October 16, 2019, and in the early morning hours of October 17, 2019, he treated C.R. "for reports of a sexual assault." He interviewed her, and "she indicated that she was unsure of the type of penetration that occurred as part of the sexual assault," but said "she [thought] it was in her butthole."

¶ 31    The State rested, and the trial court denied defense counsel's motion for a directed finding. The court advised Mr. Alvarado-Morales, through an interpreter, of his right to testify or to refrain from doing so, and the defense rested without presenting evidence.

¶ 32                                      C. Verdict and Sentencing

¶ 33    Following closing arguments, the jury deliberated and found Mr. Alvarado-Morales guilty of two counts of predatory criminal sexual assault of a child—count 1 (penis-to-anus contact) and count 4 (penis-to-hand contact)—and not guilty of the remaining two—counts 2 and 3 (penis-to-vagina). The trial court denied Mr. Alvarado-Morales's posttrial motion and, following a sentencing hearing, sentenced him to two consecutive terms of 14 years in prison.

¶ 34    Mr. Alvarado-Morales now appeals.

¶ 35                                      II. JURISDICTION

¶ 36    Mr. Alvarado-Morales was sentenced on January 11, 2024, and filed his notice of appeal the same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois

Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb 6, 2013) and 606 (eff. July 1, 2017), which together govern appeals from final judgments in criminal cases.

¶ 37                                    III. ANALYSIS

¶ 38                         A. Sufficiency of the State's Evidence

¶ 39    Mr. Alvarado-Morales first argues that we must reverse his convictions outright because the State's evidence was insufficient to support a finding of guilt beyond a reasonable doubt. The law governing such a challenge is well established. The State has the burden of proving each element of an offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958 ¶ 35 (citing *Jackson v. Virginia*, 443 U.S. 307, 315-316, (1979), and *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009)). "When the sufficiency of the evidence supporting a criminal conviction is challenged, '[t]he relevant inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Ramos*, 2020 IL App (1st) 170929, ¶ 57 (quoting *People v. Ward*, 215 Ill. 2d 317, 322 (2005)). The reviewing court does not retry the defendant. *Gray*, 2017 IL 120958, ¶ 35. Rather, "[i]t is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *Id.* We will find the evidence insufficient only where it is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 40    Mr. Alvarado-Morales was convicted of two counts of criminal sexual assault of a child 720 ILCS 5/11-1.40(a)(1) (West 2018). A person commits this offense when, being 17 years of age or older, he or she "commits an act of contact, however slight, between the sex organ or anus of one person and the part of the body of another for the purpose of sexual gratification or arousal of the victim or the accused, or an act of sexual penetration," and the victim is under 13 years of age. *Id.* "Sexual penetration" means "any contact, however slight, between the sex organ or anus

of one person and an object or the sex organ or anus of another person ***." *Id.* § 11-0.1. In the two counts at issue here, the State alleged that, between November 1, 2016, and October 31, 2019, when he was over the age of 17 and C.R. was under the age of 13, Mr. Alvarado-Morales knowingly (1) penetrated C.R.'s anus with his penis and (2) made contact, for the purpose of sexual gratification or arousal, between his penis and C.R.'s hand.

¶ 41    As proof of these charges, the State presented the live testimony of C.R. and of Detective Cifuentes. C.R. testified that on "at least 8 to 10" occasions, generally after they had gone to the gym together, Mr. Alvarado-Morales had taken her to the family's back porch, pulled her pants down, and penetrated her anus with his penis. On one occasion he had also had her touch his penis in the car. Detective Cifuentes testified that after being Mirandized, Mr. Alvarado-Morales agreed to be questioned in Spanish, his native language, and generally confirmed much of C.R.'s account. Specifically, he admitted that on several occasions he masturbated behind C.R., with his penis exposed and her shorts and underwear pulled down, that the tip of his penis touched her buttocks but "wouldn't go in"—and that she resisted him and said it hurt. When told that C.R. had also alleged contact between his penis and her hand in the car, Mr. Alvarado-Morales explained that he "exposed his penis, told [C.R.] to look at it, and then eventually she touched it." He even corrected C.R.'s account, saying, according to Detective Cifuentes, that "it didn't happen in front of the house, it happened close to the house."

¶ 42    Mr. Alvarado-Morales now attacks the credibility of each of these witnesses. He begins by insisting that no reasonable trier of fact could have found C.R. credible because she was "thoroughly impeached." We disagree. A witness is thoroughly impeached when there are "flaws in [the witness's] testimony [that make] it impossible for any fact finder reasonably to accept any part of it." *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004). Short of that, "it is for the fact finder to judge how flaws in part of [a witness's] testimony affect the credibility of the whole." *Id.*

10

¶ 43    Certainly, defense counsel here drew out inconsistencies in C.R.'s testimony. C.R. testified, for example, that the reason for the initial outcry she made to her mother was that she thought she might be pregnant. She agreed on cross-examination, however, that she told the doctor who examined her at the hospital that she was "unsure of the type of penetration but [she] thought it was [her] butthole." She further agreed that she later told the forensic interviewer that Mr. Alvarado-Morales never inserted his penis in her vagina and that she was not scared that she was pregnant "because the penetration only happened to [her] butt." On redirect examination, C.R., who was 17 at the time of trial, explained that she was "more informed on how you get pregnant" and on "where these body parts are" than she had been during the interview, which occurred when she was 12. On re-cross, however, she agreed she had demonstrated an understanding of these matters during the interview.

¶ 44    These inconsistencies are not so damaging that a reasonable trier of fact would be forced to disbelieve everything C.R. said. As to the reason for her initial outcry, a reasonable juror could have concluded that, although C.R. knew at that time what type of sexual penetration could lead to pregnancy, she wanted to provide her mother a reason for why she had not come forward earlier, particularly where her mother was pregnant with Mr. Alvarado-Morales's baby and her allegations were likely to throw the family into disarray. A reasonable juror could also have concluded that C.R. was actually confused regarding her anatomy and the possibility that she might be pregnant when she made her initial outcry and was examined by Dr. Amjad, but that she learned something about those matters in the nine days between the outcry and her CACC interview. She may have had further discussions with her mother, for example, who was no doubt eager to understand exactly what had happened to her daughter.

¶ 45    Mr. Amado-Morales also points out that C.R. testified at trial to details that she omitted in her previous accounts of what happened. For example, she testified that she once unsuccessfully

tried to escape from him on the porch, but she did not tell that to the forensic interviewer. She likewise testified that Mr. Alvarado-Morales had her touch his penis in the car before they went to the gym together, but she did not provide that detail to the police when they first questioned her. C.R. also testified at trial that the penetration hurt, though she told the CCAC interviewer that she "didn't really feel anything" and "[t]here wasn't really a feeling."

¶ 46     Rather than showing that C.R. was not a credible witness, C.R.'s testimony shows that, on certain points, her memory of the events was stronger at trial than when she made her pretrial statements, but on other points, the opposite was true. In fact, at trial, she agreed both that her memory was fresher during the CCAC interview than it was at trial and, conversely, that she was "remembering more things" at trial than she had recounted in her interview. A reasonable juror may have viewed her responses as a candid acknowledgement of these facts. A reasonable juror may also have concluded that C.R. provided different details depending on which questions she was asked, when and how long she was interviewed, and by whom.

¶ 47     Most importantly, all of the discrepancies between C.R.'s testimony and her previous accounts were fully explored and presented to the jury. We do not find them to be of such a substantial or pervasive nature that no reasonable juror could have believed any part of C.R.'s trial testimony. See *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67 (noting that "[t]he trier of fact is free to accept or reject as much or as little of a witness's testimony as it pleases" (internal quotation marks omitted)) and *People v. Soler*, 228 Ill. App. 3d 183, 200 (1992) (observing that where "minor inconsistencies or discrepancies exist in a complainant's testimony but do not detract from the reasonableness of her story as a whole, the complainant's testimony many be found to be adequate to support a conviction for sexual abuse").

¶ 48     Mr. Alvarado-Morales also argues that the incriminating statements he made to Detective Cifuentes could not be credited because the circumstances under which those statements were

obtained were "highly suspect." He points out that Detective Cifuentes failed to follow proper procedures when interrogating him, kept pressing him despite his repeated denials, essentially "fed all th[e] information to [him]," and conducted no further investigation to corroborate the details of the offenses by, for example, visiting or photographing the house or speaking to neighbors or to C.R.'s siblings.

¶ 49    We are, again, unpersuaded by this argument. Detective Cifuentes acknowledged that he was required to, but did not, include a notation in his report that he informed Mr. Alvarado-Morales of his right to have the Mexican consulate notified of his arrest, and that he was required to, but did not, either present Mr. Alvarado-Morales with a written advisement of his rights in Spanish, or use an authorized Spanish interpreter to conduct the interview. But Detective Cifuentes testified that he Mirandized Mr. Alvarado-Morales in Spanish, that the two were both native Spanish speakers, and that Mr. Alvarado-Morales agreed to speak with him after being advised of his rights. Mr. Alvarado-Morales presents no evidence or argument that these lapses in protocol had any impact on the voluntariness of the statements he made to the detective or that those statements were otherwise inadmissible. The jurors were made aware of those lapses, and it was for them to consider what, if any, effect they had on the reliability of Mr. Alvarado-Morales's incriminating statements.

¶ 50    The same is true of the  interrogation tactics Detective Cifuentes employed to elicit Mr. Alvarado-Morales's confession, which counsel explored at length at trial. It was for the jurors, not this court, to decide what weight to assign to his custodial statements, in light of what he said and how those statements were obtained, and they were so instructed.

¶ 51    As to any lack of other evidence corroborating C.R.'s account, none was necessary. A single witness's credible testimony is sufficient to sustain a conviction (*People v. Mosley*, 2023 IL App (1st) 200309, ¶ 18), and the State has no extra burden to corroborate a complainant's

testimony in a sexual assault case (*People v. Parker*, 2016 IL App (1st) 141597, ¶ 29). Further, C.R.'s account *was* substantially corroborated—by Mr. Alvarado-Morales's own custodial statements. We find it both unsurprising and immaterial that the detectives concluded their investigation soon after securing that evidence. In any event, defense counsel made this same argument to the jurors, who also apparently found it unpersuasive.

¶ 52    Finaly, Mr. Alvarado-Morales makes much of the fact that the jury acquitted him on the two counts of predatory criminal sexual assault of a child that were based on vaginal penetration. Because he only confessed, according to Detective Cifuentes, to sexual contact supporting the other two counts, he views the acquittals as proof that the jurors did not find C.R. credible and urges us to conclude that he was found guilty here solely on the basis of a questionable confession. We disagree that we should reach this conclusion.

¶ 53    As noted above, a trier of fact is entitled to believe all, none, or any part of a witness's testimony. *Cunningham*, 212 Ill. 2d at 283). In our view, the split verdict here indicates that the jurors took proper consideration of both the weaknesses in C.R.'s testimony and any concerns they had with Mr. Alvarado-Morales's confessions, finding the State had met its burden only on those charges that were supported by both evidentiary sources. Having considered the record as a whole, we cannot say that no rational trier of fact could have found Mr. Alvarado-Morales guilty beyond a reasonable doubt on these two charges.

¶ 54                                    B. Unanimous Verdict

¶ 55    Mr. Alvarado-Morales argues in the alternative that he is entitled to a new trial because the trial court failed to give the jury a non-pattern jury instruction that he never proposed. He argues that the instructions and verdict forms given did not require the jurors to agree on a specific *instance* of the sexual act underlying each of his convictions, and that this violated his sixth amendment right to a unanimous jury verdict.

¶ 56    Mr. Alvarado-Morales acknowledges that he has forfeited this issue, both by failing to propose an alternate or additional verdict form or instruction at trial and by failing to raise the adequacy of the forms and instructions in his posttrial motion. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). He maintains, however, that we may still consider the issue, as either second-prong plain error or as a claim of ineffective assistance of trial counsel. To invoke the plain error exception to forfeiture, however, an appellant must first establish a clear and obvious error. *People v. Harris*, 225 Ill. 2d 1, 24 (2007). And it is not ineffective assistance for trial counsel to raise no objection to jury verdict forms and instructions that accurately state the law. See *People v. Lewis*, 88 Ill. 2d 129, 156 (1981) ("Counsel is not required to make losing objections in order to provide effective representation."). Because, as explained below, we agree with the State that the jury here was properly instructed, we need not consider these arguments that Mr. Alvarado-Morales makes to overcome forfeiture.

¶ 57    A defendant's right to a unanimous jury verdict in support of a criminal conviction is guaranteed by both the United States and Illinois constitutions. *People v. Jackson*, 2022 IL 127256, ¶ 33. Whether this or any other constitutional right has been violated is a question we review *de novo*. *People v. Burns*, 209 Ill. 2d 551, 560 (2004).

¶ 58    "Jury instructions are intended to help jurors properly apply the law to the evidence presented and reach a correct verdict." *People v. Hampton*, 2024 IL App (1st) 230171, ¶ 28. Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) provides that, when the Illinois Pattern Jury Instructions (IPI) contain an applicable instruction, that instruction "shall be used, unless the court determines that it does not accurately state the law." Where no applicable IPI instruction exists on a matter that the trial court concludes the jury should be instructed on, the court may, at its discretion, give a nonpattern instruction on that subject that is "simple, brief, impartial, and free from argument." *Id.* Whether the instructions given accurately conveyed the law to the jury is also

a question we review *de novo*. *People v. Parker*, 223 Ill. 2d 494, 501 (2006).

¶ 59    The jurors in this case received both a guilty and a not guilty verdict form for each of the four counts of predatory criminal sexual assault of a child that Mr. Alvarado-Morales was charged with. These included one count based on penetration consisting of contact between Mr. Alvarado-Morales's penis and C.R.'s anus (count 1), one count based on contact, for purposes of sexual gratification or arousal, between Mr. Alvarado-Morales's penis and C.R.'s hand (count 4), and two separate instances of penetration consisting of contact between Mr. Alvarado-Morales's penis and C.R.'s sex organ (counts 2 and 3). The jurors was instructed that, to find Mr. Alvarado-Morales guilty of those charges, they had to unanimously conclude beyond a reasonable doubt that he knowingly committed "an act" of sexual penetration or contact of the type specified. However, he argues on appeal that the verdict forms and instructions given did not require the jurors to clearly and unanimously agree "on a *specific act* underlying each charged offense" for which he was found guilty. (Emphasis added.) What Mr. Alvarado-Morales is really saying is that the jurors also needed to agree on a specific *instance* of each act.

¶ 60    To begin with, Mr. Alvarado-Morales was acquitted of all charges of penetration consisting of contact between his penis and C.R.'s sex organ, so there can be no reversible error in the instructions given as to counts 2 or 3. We are also unclear whether this argument applies to count 4. C.R. testified to only one occasion, occurring in the car on the way to the gym, when Mr. Alvarado-Morales asked her to touch his penis with her hand. This was consistent with what Mr. Alvarado-Morales relayed to Detective Cifuentes about a single instance on which that occurred. Thus, it would appear that the only count Mr. Alvarado-Morales was convicted on and for which evidence of multiple instances of the same contact was presented at trial was count 1, the charge that Mr. Alvarado-Morales penetrated C.R. anally, something that C.R testified had occurred on 8-10 occasions when the two of them were on the back porch of the family's home. However, even if

the jurors believed, as Mr. Alvarado-Morales apparently does, that there was also testimony of multiple instances of contact between his penis and C.R.'s hand, the argument that their verdict was not unanimous fails as to counts 1 and 4 for the same reason.

¶ 61 We agree with the State that the lack of a non-IPI instruction requiring the jurors to agree on a specific instance of either of these two types of contact did not violate Mr. Alvarado-Morales's right to a unanimous verdict. We rejected this same argument in *People v. Reynolds*, 294 Ill. App. 3d 58, 70 (1997). The defendant in that case was charged with obstruction of justice, sexual assault, child pornography, and aggravated sexual abuse, all stemming from sexual intercourse he had with a sixteen-year-old girl over a period of five months. *Id.* at 60-61. The defendant argued on appeal that the jurors in his case should have been given separate forms, not only for each type of sexual penetration, but "for each of the three identifiable 'episodes' of sexual interaction," to ensure that any guilty verdict they reached was unanimously based on the same specific incident. *Id.* at 70. We disagreed, concluding that the testimony at trial established not three distinct "episodes" of unlawful conduct, but rather "an ongoing sexual relationship between [the] defendant and [victim]" that constituted a continuous course of conduct, and in such a case, no separate verdict form was required for each individual occurrence. *Id.* at 70-71.

¶ 62 The cases relied on by Mr. Alvarado-Morales do not, as this case did, involve charges based on a continuous course of conduct. The defendant in *People v. Scott*, 243 Ill. App. 3d 167, 168 (1993), for example, was charged with three distinct counts of the distribution of illegal narcotics based on sales he made to three different undercover officers. *Id.* At the jury instruction conference, the State tendered six IPI verdict forms, a guilty and a not guilty form for each charge, but the trial court *sua sponte* modified the instructions to provide just two forms, a "guilty" and a "not guilty" form for a single charge of delivering narcotics. *Id.* We held that this violated the defendant's constitutional right to a unanimous verdict because it was possible that all twelve jurors believed

17

the defendant was guilty, but not necessarily of the same delivery count. *Id.* at 169. Unlike the offenses in *Reynolds*, the drug sales in *Scott* did not constitute "a continuous course of conduct" stemming from an ongoing relationship with a single other person. They were separate and distinct transactions.

¶ 63    In *People v. Cardamone*, 381 Ill. App. 3d 462, 464 (2008), there were over two dozen charges of sex offenses committed by a gymnastics coach against 14 different gymnasts. The jury ultimately found the defendant guilty of nine counts against seven of the girls. *Id.* The trial court had rejected the defendant's proposed non-IPI jury instruction, which would have instructed the jurors that, to find him guilty, they had to " 'unanimously agree upon the commission of the same specific act constituting the crime within the period alleged.' " (Emphasis omitted.) *Id.* at 498. We concluded that was error because, given the uniquely high volume of other crimes evidence introduced during the two-month trial, there was a real danger that jurors might not understand they were required to unanimously agree that the defendant was guilty not just of sexual offenses, but of the specific, charged offenses. *Id.* at 499. We made clear both that such an instruction would not be warranted in all cases and that we were not holding "that specificity regarding dates or a description of the conduct was required" for a verdict form to be acceptable. *Id.* Unlike *Cardamone*, this case involves allegations of an ongoing relationship with a single victim and simply does not raise the same concerns.

¶ 64    While *People v. Filipiak*, 2023 IL App (3d) 220024, the most recent of this court's decisions relied upon by Mr. Alvarado-Morales, did arguably involve a continuous course of conduct, that case is also inapplicable. The defendant in *Filipiak* was charged with *two* counts based on the same type of sexual contact committed at two different times against the same victim. *Id.* ¶ 3. Here, Mr. Alvarado-Morales was charged with a single count of penis-to-anus contact and a single count of penis-to-hand contact. See *People v. Thongjareon*, 2024 IL App (2d)

230342-U, ¶ 41 (distinguishing *Filipiak* on this basis).

¶ 65    The defendant in *Filipiak* was charged with two counts of predatory criminal sexual assault of a child, both involving the same victim. At trial, the victim testified that while at a sleepover at the defendant's house, he entered the bedroom where she was changing after taking a shower and digitally penetrated her vagina. *Id.* ¶ 6. Later that night, when she had fallen asleep on a couch in another room, the defendant woke her and again digitally penetrated her vagina. *Id.* The verdict forms given to the jury, rather than specify the locations of those two incidents of the same illegal conduct, simply referred to them as "finger in vagina-1" and "finger in vagina-2." *Id.* ¶ 9. The jury convicted the defendant of one count and acquitted him of the other. *Id.* ¶ 12. He argued on appeal that the failure to distinguish between the two instances violated his right to a unanimous jury verdict. *Id.* ¶ 12.

¶ 66    We agreed, because it was impossible to "ascertain[ ] with reasonable certainty whether the jury intended to convict [the] defendant of the shower conduct while acquitting him of the couch conduct or vice versa." *Id.* ¶ 16. We explained that, where the State elects to charge distinct instances of the same illegal sexual conduct as separate offenses that could subject the defendant to separate penalties, then the jury must be unanimous as to which of those distinct instances is the basis for its finding of guilt. *Id.* ¶ 17. Here, although C.R. testified that the penis-to-anus contact occurred approximately 8-10 times, the State did *not* charge Mr. Alvarado-Morales with separate instances of that contact. The jurors were therefore not required to unanimously base their guilty verdict on a single instance of sexual contact.

¶ 67    Mr. Alvarado-Morales also cites a number of out-of-state cases. Some are distinguishable on the same bases we have just discussed. To the extent that any others are not, we "do not look to the law of other states when there is relevant Illinois case law available." *In re Estate of Walsh*, 2012 IL App (2d) 110938, ¶ 45. We see no reason here to depart from the relevant decisions of

our own courts in favor of out-of-state precedent.

¶ 68    In sum, the signed verdict forms show that the jurors unanimously found Mr. Alvarado-Morales guilty of predatory criminal sexual assault of a child based on acts of contact between his sex organ and C.R.'s anus (count 1) and contact between his sex organ and C.R.'s hand (count 4). Where he was not charged with multiple counts of either type of contact, the jury was not required to pinpoint which specific instance of that conduct underlay their finding of guilt on each charge.

¶ 69                                    IV. CONCLUSION

¶ 70    For all of the above reasons, we affirm Mr. Alvarado-Morales's convictions for predatory criminal sexual assault of a child.

¶ 71    Affirmed.